## LEW JIM v. UNITED STATES.

### (Circuit Court of Appeals, Ninth Circuit. February 18, 1895.)

### No. 186.

1. CHINESE EXCLUSION ACTS—MERCHANTS.

A Chinese person who, during his residence in the United States, was engaged in business as a member of a firm of dealers in fancy goods, but occasionally, during a year previous to his departure for a temporary visit, worked for short periods as a house servant, in order to accommodate an old employer at times when he was without a servant, was engaged in manual labor within the meaning of section 2, Act Cong. Nov. 3, 1893, known as the "McCreary Act."

2. SAME—APPLICATION TO PERSONS LEAVING THE COUNTRY BEFORE THEIR PASSAGE.

Act Nov. 3, 1893, applies to Chinese persons formerly residing in the United States, who left the country before the passage of the act, and afterwards seek to return.

Appeal from the District Court of the United States for the Northern District of California.

This was an application by Lew Jim for a writ of habeas corpus to obtain his discharge from the custody of the collector of the port of San Francisco. The district court remanded the petitioner to the custody of the collector. Petitioner appeals. Affirmed.

Henry C. Dibble, for appellant.
Charles A. Garter, U. S. Atty.

Before McKENNA, Circuit Judge, and HANFORD and HAWLEY, District Judges.

McKENNA, Circuit Judge. The appellant is a subject of the emperor of China, and claims to have been a resident Chinese person in San Francisco, and partner in the Chinese firm of Bing Kee, dealers in Japanese fancy goods, 619 Dupont street, his interest being $1,000, and that he departed for China September 6, 1892, for a temporary visit, and that he returned on the 1st day of April, 1894, to resume his business as a member of said firm. The collector of the port would not permit him to land, and he applied to the district court for writ of habeas corpus, which was issued, and the matter referred to a referee to take the testimony and report his conclusion to the court. The referee reported that appellant had failed to establish by the testimony of two credible witnesses, other than Chinese, the fact that during the period of one year prior to his departure for China he was not engaged in the performance of any manual labor except such as was necessary in the conduct of his business as a merchant, as required by section 2 of the act of congress approved November 3, 1893, known as the "McCreary Act." The report was excepted to, but confirmed by the district court, which held that he was "a Chinese person, forbidden by law to land within the United States, and has no right to be or remain therein," and entered a judgment remanding him to the custody from which he was taken. From this judgment this appeal is taken.

The evidence establishes that appellant had an interest in the firm of Bing Kee at his departure, and also shows (by a white witness) that for periods of varying lengths, not exceeding two weeks at any one time, he worked as a house servant within a year before his departure, and received wages. This was done for the accommodation of an old employer at times when he was without a servant. Appellant, however, contends that such employment did not constitute the performance of manual labor within the meaning of section 2 of the McCreary act. The Chinese exclusion acts are undoubtedly directed to the exclusion of laborers, but to effectually accomplish this purpose it became necessary not only to make certain the definition of the term, but to make also certain the definition of the term "merchant," under which name impositions upon the law were practiced. This was done by the McCreary amendment to the Geary law, and the burden of proof was cast on the Chinaman to affirmatively establish his character as a merchant. Section 2 of the amendment is as follows:

"The words 'laborer' or 'laborers,' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation. The term 'merchant,' as employed herein and in the acts to which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant. When an application is made by a Chinaman for entrance into the United States on the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses other than Chinese the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States, and that during such year he was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant, and in default of such proof shall be refused landing. * * *"

The provisions of the section are very strict, and we think appellant engaged in manual labor within its meaning.

The appellant further urges that, as he departed prior to the passage of said section 2, he is not within its provisions, and hence was not required to establish that he did not engage in manual labor other than in his business. We are unable to concur in this view. It is true, as we have said, the exclusion acts are directed against laborers, and that by the treaty between the United States and China, which was in existence at the time judgment was rendered, merchants "shall be allowed," to quote the treaty, "to go and come of their own free will and accord." It is, at this late day of the subject, almost as superfluous to say as to argue that it is competent for the United States to impose conditions on this permission. An intention to do so might not be imputed on ambiguous language, but, where the language is plain, the courts must so interpret it. And we think it is plain, and, considering its object, unmistakeable. By previous legislation, Chinese laborers could

not come at all, and to prevent their entering under the disguise of merchants was the object of section 2 and its careful definitions and provisions. It was an immediate remedy for an immediate evil. The judgment of the district court is therefore affirmed.