UNITED STATES v. YONG YEW.

(District Court, E. D. Missouri, E. D. November 23, 1897.)

1. DEPORTATION OF CHINESE—CERTIFICATE OF IDENTITY.

In order to make a certificate of identity required by Act July 5, 1884, § 6 (23 Stat. 115), relating to Chinese immigration, prima facie evidence of the holder's right to come into this country as a merchant, it must conform strictly to the requirements of the statute as to its contents, so as not to permit of evasion or deception.

2. SAME—MERCHANT—LABORER.

Even if the certificate of identity of a "merchant" of China is in due form, he may enter this country only for the purpose of prosecuting his business as a merchant here; and if, upon his arrival, he immediately proceeds to and continues in employment as a laborer, such fact has a strong retroactive bearing as evidence of the intent with which he came here.

3. SAME.

Respondent, a Chinaman, came to this country for the first time in June, 1897. From that time until his arrest on September 9, 1897, under the statute relating to Chinese immigration, he worked in a laundry in Hannibal, Mo. He testified that he had an interest of $1,000 in the Chinese grocery business conducted under the name of One Lung at 43 Mott street, New York City. *Held,* that this did not constitute him a "merchant," under Act November 3, 1893 (28 Stat. 7), but that he was a "laborer," within section 2, and so liable to deportation.

4. SAME—TRICK OR EVASION—VIOLATION OF STATUTE.

It is as much a violation of the Chinese exclusion acts for a laborer, who by any trick or evasion secures an entry to our ports, to remain in the United States, as it would have been to originally land on our shores.

This was a proceeding, under the Chinese exclusion laws, to procure an order for the deportation of one Yong Yew.

William H. Clopton, U. S. Dist. Atty., and Walter D. Coles, Asst. U. S. Dist. Atty.

Rufus E. Anderson, for respondent.

ADAMS, District Judge. Section 13 of the act of congress approved September 13, 1888 (25 Stat. 476), provides that:

"Any Chinese person, or person of Chinese descent, found unlawfully in the United States, or its territories, may be arrested upon a warrant issued upon

a complaint, under oath, filed by any party on behalf of the United States, * * * and when convicted, upon a hearing, and found and adjudged to be one not lawfully entitled to be or remain in the United States, such person shall be removed from the United States to the country whence he came. But any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the district court for the district."

Pursuant to the provisions of this act, complaint was duly filed before United States Commissioner Moore charging that the respondent is a Chinese person not born or naturalized in the United States, and unlawfully in the United States and not lawfully entitled to be and remain therein. Warrant was duly issued on this complaint, and the respondent was arrested and brought before the commissioner, where, upon a hearing duly had, it was found and adjudged that the respondent was not entitled to remain in the United States, and he was ordered to be deported to the country whence he came. From this judgment an appeal was duly prosecuted to me, as judge of this district.

At the hearing the respondent testified as follows:

"I was born in Hong Kong, China, and am twenty-three years old. I first came to the United States in June, 1897. I had never been here before. I went from Hong Kong, China, to Havana, Cuba; and, after remaining in Havana some time, I came from Havana, Cuba, to New York City, in June, 1897. I went from New York to Quincy, Illinois, and from there to Hannibal, Missouri. I have been in Hannibal since June, and have been in Sang Woo's laundry, helping him, as he is a friend of mine. Before coming to the United States, I was a tea merchant in Hong Kong, China. I now have an interest of $1,000 in the Chinese grocery business conducted under the name of One Lung at 43 Mott street, New York."

Further proof shows that the respondent secured entry into the United States, at the port of New York, under a certificate of identity issued by the Chinese consul general in Havana, Cuba. In this certificate, respondent is certified to have been a "merchant" at Hong Kong from the year 1894. It is therein further certified that the nature and character of his business was an "exporter of teas," and the value of his business is therein certified as follows: "His share in the firm of We Chong & Co., Hong Kong, China, $1,000." The proof further shows that the respondent, soon after his arrival in this country, in June, 1897, went to Hannibal, Mo., where he immediately began to work as a laundryman in the laundry of Sang Woo, and that he continued to so work continuously until September 9, 1897, the date of his arrest by the United States marshal under the commissioner's warrant. The question is, is this person, under the proof above detailed, entitled to remain in the United States?

By the provisions of the treaty between the United States and China promulgated October 5, 1881 (22 Stat. 826), it was agreed between the two high contracting parties that the immigration of Chinese labor to this country might be regulated, limited, or suspended, but not absolutely prohibited. Article 1 of this treaty provides as follows:

"Whenever, in the opinion of the government of the United States, the coming of Chinese laborers to the United States, or their residence therein, affects or

threatens to affect the interests of that country, or to endanger the good order of the said country or of any locality within the territory thereof, the government of China agrees that the government of the United States may regulate, limit, or suspend such coming or residence, but may not absolutely prohibit it."

Article 2 of said treaty provides:

"That Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

The preamble of the president's proclamation of date October 5, 1881, promulgating this treaty as an accomplished compact between the two countries, is as follows:

"Whereas, the government of the United States, because of the constantly increasing immigration of Chinese laborers to the territory of the United States, and the embarrassments consequent upon such immigration, now desires to negotiate a modification of the existing treaties which shall not be in direct contravention of their spirit: Now, therefore," etc.

With a view to execute certain stipulations of this treaty, the congress of the United States, by an act approved May 6, 1882 (22 Stat. 58), enacted, among other things, as follows:

"Section 1. That from and after the expiration of ninety days next after the passage of this act, and until the expiration of ten years next after the passage of this act, the coming of Chinese laborers to the United States be, and the same is hereby, suspended; and during such suspension it shall not be lawful for any Chinese laborer to come, or, having so come after the expiration of said ninety days, to remain within the United States."

Section 6 of the last-mentioned act of congress is as follows:

"That in order to the faithful execution of articles 1 and 2 of the treaty in this act before mentioned [referring to the treaty promulgated on the 5th day of October, 1881], every Chinese person other than a laborer who may be entitled by said treaty and this act to come within the United States, and who shall be about to come to the United States, shall be identified as so entitled by the Chinese government in each case, such identity to be evidenced by a certificate issued under the authority of said government, which certificate shall be in the English language or (if not in the English language) accompanied by a translation into English, stating such right to come, and which certificate shall state the name, title, or official rank, if any, the age, height, and all physical peculiarities, former and present occupation or profession, and place of residence in China of the person to whom the certificate is issued, and that such person is entitled conformably to the treaty in this act mentioned to come within the United States. Such certificate shall be prima facie evidence of the facts set forth therein, and shall be produced to the collector of customs, or his deputy, of the port in the district in the United States at which the person named therein shall arrive."

The next legislation on the subject in question is found in an act of congress approved July 5, 1884 (23 Stat. 115). By the provisions of this last-mentioned act, section 1 of the act of May 6, 1882, is amended so as to suspend the immigration of Chinese laborers to the United States for the period of 10 years after the passage of this last-mentioned act, and, in the event any Chinese laborer may have come to the United States, to render it unlawful for him to remain within the United States. Section 6 of the act of 1882 is amended

so as to prescribe, as an additional requirement in the certificate of identity (in the event the person applying for such certificate claims to be a merchant), that the same shall state "the nature, character and estimated value of the business carried on by him prior to and at the time of his application." Such was the legislation on this subject up to the passing of the act of September 13, 1888, supra. At the time this bill was pending before congress, a treaty, before then negotiated between the United States and China, was under consideration of the two governments for ratification or rejection; and the congress of the United States, in the belief, doubtless, that it would finally be ratified, undertook in and by the act of 1888 to legislate in a comprehensive way on this subject, and, in and by the last section of the act, repealed the provisions of the prior acts of congress of May 6, 1882, and July 5, 1884, supra, but in terms provided that such repeal should take effect upon the ratification of the then pending treaty. This treaty was never ratified, and as a result the former acts were not repealed, and the act of September 13, 1888, went into effect unconditionally. As a result, the legislation on this subject is somewhat confused. The former acts, in so far as they are not modified or repealed by implication, are in force; and the court must consider them, as well as the act of September 13, 1888, already referred to, and the subsequent acts of May 5, 1892, and November 3, 1893, in order to ascertain what the law is on the subject in question. Section 1 of the act of May 5, 1892 (27 Stat. 25), extends the time within which Chinese laborers are prohibited from coming into this country for a period of 10 years after its passage. Section 2 of this act provides:

"That any Chinese person or person of Chinese descent, when convicted and adjudged under any of said laws [referring to any and all laws then in force] to be not lawfully entitled to be or remain in the United States, shall be removed from the United States to China, unless he or they shall make it appear to the justice, judge, or commissioner before whom he or they are tried that he or they are subjects or citizens of some other country, in which case he or they shall be removed from the United States to such country."

Section 2 of the amended act of November 3, 1893 (28 Stat. 7), defines the terms "laborer" and "merchant," as employed in any and all of the legislation on the subject, as follows:

"The words 'laborer' or 'laborers,' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen," etc. "The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant."

To illustrate and emphasize the general policy of the laws of the United States, reference may be appropriately made to the recent treaty between the United States and China promulgated December 8, 1894. Article 1 provides that for a period of 10 years, beginning with

the date of the exchange of the ratifications of this convention, the coming, except under the conditions hereinafter specified (which are immaterial for the purposes of this case), of Chinese laborers to the United States, shall be absolutely prohibited. Section 5 of this treaty recites the legislation of congress of the United States found in the acts of May 5, 1892, and November 3, 1893, already referred to, and contains an agreement on the part of the Chinese government to their strict enforcement.

From the foregoing provisions of law, it is manifest that, under the sanction and with the approval of the Chinese government, the United States has devised and put into operation an internal policy to effectually prevent the immigration of Chinese laborers into this country, and to effectually prevent Chinese laborers from remaining in this country in the event they improperly or unlawfully come here. Concurrent history, of which the court takes judicial cognizance, teaches that the mischief sought to be remedied by this legislation was to prevent the demoralizing effect upon American laborers of competition with Chinese laborers, and also to prevent the demoralizing effect of Oriental civilization, habits, customs, and morals upon the people of this country. In construing such legislation, it is clear that I must have constantly in mind the mischief sought to be remedied, and the object sought to be accomplished. A résumé of the legislation already detailed at some length, so far as applicable to the case under inquiry, is as follows: That for a period extending at least 10 years after the 7th day of December, 1894, the date of the exchange of ratifications of the last-mentioned treaty by the two governments of the United States and China, no Chinese laborer is permitted to come into this country, or, if perchance he may so come, to remain within the territorial limits of the United States. This prohibition is limited to laborers. A Chinese "merchant," if he be such within the definition of that term as found in the act of November 3, 1893, supra, is permitted to come into this country and remain here; and a certificate of identity, containing, among other things, the nature, character, and estimated value of the business carried on by him, is made prima facie evidence of his right to enter the territory of the United States as a merchant. The method of enforcing this legislation is a trial before a justice, judge, or commissioner of the United States, and, upon an adjudication that any Chinese person is not lawfully entitled to be or remain in the United States, a removal of such person from the United States to the country from whence he came.

Respondent claims that, within the meaning of the treaties and laws aforesaid, he was a merchant in China at the time of his departure for the United States, and has produced the certificate of identity already referred to, and claims it to be his protection. This is unsatisfactory for the following reasons: First. This certificate does not clearly conform to the requirements of section 6 of the act of congress of July 5, 1884, supra, under the provisions of which it derives whatever potency it has. This section provides that, if the applicant claims the right of entry because he is a merchant, he shall, among other things, state the nature, character, and estimated value of the

business carried on by him prior to, and at the time of, his application aforesaid. The first of these requirements is claimed to have been met by the following language found in the certificate: "Nature and character of business in Hong Kong, exporter of teas." This, by liberal intendment, may be considered as a compliance with the first requirement. The next requirement is that the certificate shall state the "estimated value of the business carried on by him prior to, and at the time of, his application." This is claimed to have been met by the following statement found in the certificate: "Value of his share in the firm of We Chong & Co., Hong Kong, $1,000." This statement is very vague and uncertain. It may or may not relate to the business of "exporter of teas," as specified. It may or may not relate to any business "carried on by him." He might have had an interest of $1,000 in a firm or corporation in whose business he in no manner is actively engaged, and, from the evidence which I have heard in this and several other cases, I am quite disposed to believe that such is the case. It is very common practice for Chinese, in this country, as well as for other people, for that matter, to invest money in some mercantile pursuit, and devote their personal energies to other enterprises. Again, even if I am to assume that his interest in the business of "exporter of teas" is in connection with the house of "We Chong & Co.," and that he had a $1,000 interest in that business (all of which would be the result of a forced construction of the language employed in the certificate), this would not be a compliance with the law. He should have made known "the estimated value of the business carried on by him," and not "his undivided interest" in it. Enough has already been said in relation to this matter to show that the certificate in question is so left as to permit evasion and deception. This will not do. To make this certificate prima facie evidence of respondent's right to come to this country as a merchant, it must conform strictly to the requirements of the statute as to its contents.

The respondent next claims that he was a merchant in New York at the time of his arrest at Hannibal, Mo., and was therefore not a laborer, within the meaning of the laws governing the case. He alone testifies to this fact, and his testimony is entirely unsatisfactory. He says, "I now have an interest of $1,000 in the Chinese grocery owned and conducted under the name of One Lung at 43 Mott street, New York." This evidence, even if I felt disposed to credit his uncorroborated statement, does not constitute him a merchant. It does not show that he was not engaged "in the performance of any manual labor except such as is necessary in the conduct of his occupation as such merchant," as required by section 27 of the act of November 3, 1893, already quoted. Far from this, he was at the time of his arrest, and had been ever since his arrival in this country, engaged in the business of laundryman at Hannibal. This makes him a laborer, within the meaning of section 2, supra. U. S. v. Wong Ah Hung, 62 Fed. 1005; Lew Jim v. U. S., 14 C. C. A. 281, 66 Fed. 953; Lai Moy v. U. S., 14 C. C. A. 283, 66 Fed. 955. Again, considering the public policy of the United States, as asserted and assented to in the

several treaties already referred to between the United States and China, and the repeated and emphatic declarations of such policy by the congress of the United States, as found in the several acts to which I have already called attention, I am disposed to so rule this case as to really subserve that policy. Chinese labor and Chinese civilization are not wanted in this country, and, if Chinese laborers unlawfully secure entry to our ports, they are not entitled to remain here. This is clearly contemplated and repeatedly expressed in the several treaties and acts of congress already referred to. Accordingly, I hold that it is as much a violation of the Chinese exclusion acts above referred to for a laborer, who by any trick or evasion secures an entry to our ports, to remain in the United States, as it would have been to originally land on our shores. The certificate of identity issued to respondent by the Chinese consul at Havana, even if sufficient in form and substance to constitute a prima facie case in favor of the respondent's right to enter this country as a merchant, is at best but prima facie evidence. It may be controverted. Now, construing all the legislation on this subject in the light of our internal policy as already stated, I am disposed to hold that the law, properly and effectually construed, contemplates that a merchant of China may enter this country only for the purpose of prosecuting his business as a merchant here. He may not, under pretense of being a merchant, secure entry as such, intending immediately to become and continue a laborer. I do not wish to be understood as holding that a Chinese person, who has been a merchant in his own country, and enters the United States in good faith, intending to continue the business of merchandising here, and who in like good faith enters upon that business, but, through adversity or other sufficient cause, is unable to continue, and who enters other employment for a time, is liable to deportation. But I believe that in all cases when a Chinese person enters as a merchant, and soon ceases to be one, and becomes a laborer, the facts should be carefully scrutinized; and if, as in the case of this respondent, he immediately proceeds to, and continues in, employment as a laborer, such fact ought to have a strong retroactive bearing on the intent with which he came here. And if, from all the facts of the case, it can be determined that he used his former mercantile occupation as a pretext to come here, with the real intent and purpose of laboring, only, when here, such former occupation should not shield him, even if his certificate of entry be correct in form and substance. Such, I think, is the case of this respondent. Conceding full faith and credit to his certificate of identity, his conduct, in proceeding immediately to work as a laborer, and continuing so to do up to the time of his arrest, belies his pretensions as a merchant. The prima facie case made by his certificate is overcome by the facts. He is not lawfully entitled to be or remain in the United States. An order will be made for his removal from the United States to China, and the same will be executed with all convenient speed by the marshal of this district.