UNITED STATES v. PIN KWAN.

(District Court, N. D. New York. June 14, 1899.)

ALIENS—DEPORTATION OF CHINESE.

A Chinese person, not a laborer, who has come here with a certificate properly signed and viséd, and after examination, has been permitted to enter the United States and has engaged in business here as a merchant for 17 months cannot, in the absence of fraud, be deported, on the ground that the certificate is incomplete and defective in matters of nomenclature and description.

Appeal by defendant from an order of deportation entered by a United States commissioner.

Wesley C. Dudley, Asst. U. S. Atty.
Richard Crowley, for defendant.

COXE, District Judge. This case is devoid of trickery and fraud. The conduct of the defendant has been exemplary throughout. He has not entered the United States clandestinely; he has not deceived the officers of the government or withheld any information to which they are entitled. If there has been a failure to observe the strict letter of the law they, and not he, are responsible. He came to Buffalo October 27, 1897, with a certificate under section 6 of the act of July 5, 1884 (23 Stat. 115), signed by the registrar general and viséd by the United States consul at Hong Kong. This certificate states the defendant's former and present occupation as "assisted accountant." It also states that he is a Chinese person other than a laborer and that he is "going to Buffalo, N. Y., to join Quong Seng Lung & Co., 500 Michigan street, and attend to the business of the said company." On arrival at Buffalo he was examined by the collector and the inspector of immigration located at that port. His papers were found sufficient in every particular, his identification was complete and he was duly admitted into the United States, the collector certifying over his own signature to that effect. The United States inspector of immigration, Mr. De Barry, testifies as follows:

"I know Pin Kwan, the defendant; I admitted him in the United States on October 27, 1897, and have known him since that time. I have frequently

seen defendant at both of the stores (Nos. 494 and 500 Michigan street) selling goods and keeping accounts; I have never seen him doing anything else."

On the 17th of March, 1899, the defendant was arrested and brought before a United States commissioner. During the interval he has lived an industrious life, attending to the business of the firm at its stores on Michigan street, keeping its books and selling its goods. He has done nothing else. The business consists of general merchandise, such as wines, liquors, tobacco, medicine, clothing, shoes, soaps, etc. The defendant on coming here acquired an interest in the business and still holds it. All of these facts are undisputed.

Here, then, is the case of a man who, armed with a passport, signed by the duly authorized agents of the United States in China, has left his native land and journeyed 10,000 miles to engage in business in this country. Upon his arrival his credentials are carefully scrutinized by two agents of the United States and his right to enter this country is unhesitatingly confirmed. Upon the faith of this permit he invests his money here and devotes his entire time to mercantile pursuits. After nearly 18 months he is arrested, and it is proposed to send him back to China because of alleged defects in his entrance certificate, due not to any fault of his but to the carelessness of the agents of the United States. Before sanctioning this proceeding the court should be very sure of the rectitude of its position. The commissioner felt constrained to follow certain rulings of the executive officers of the government, placing a strict construction upon section 6 of the act of July 5, 1884, but, evidently, he reached this conclusion with reluctance and regret for he says:

"I am compelled to render a judgment against the defendant, but in fair dealing the decision in this case ought to be otherwise."

The court is in entire accord with the conclusion that good faith and fair dealing require that the defendant should be discharged. If it be possible for the United States to bind itself by the acts of its agents this controversy presents such a case. To repudiate this action now, after the defendant in reliance thereon has invested his money here, borders very closely upon bad faith. The entire volume of Chinese litigation is directed against Chinese laborers. No one can read the treaties, the debates in congress and the statutes which have, from time to time, been enacted upon this subject without being impressed with this fact. It was the object of the lawmakers to prevent the degraded and cheap labor of the East from coming in contact with the intelligent and high-class labor of this country. It was not their intention to exclude those who come here to invest their money in mercantile pursuits and thus add to the commerce and prosperity of the country. In dealing with these cases it has been the central aim of this court to ascertain the fundamental fact whether the defendant belongs to the prohibited class or not. If he does he should go back. If he does not he should, irrespective of technical considerations, be permitted to remain. When a Chinese person lands at one of our ports armed with the statutory certificate it would seem that

then is the time when the government should take advantage, if it desires to do so, of mere defects of form and description. After the certificate has been examined and declared sufficient and the person permitted to enter this country and, on the faith of such permission, has invested his money and engaged in business here, it would seem too late to order him back to China because of irregularities which, in legal effect, were waived by the collector. The law does not say that such certificate shall be the sole evidence to establish the right of the person to remain in this country, but that it shall be the sole evidence "to establish a right of entry into the United States." This is not a question whether the defendant should be permitted to enter this country. He was permitted to enter. He is here, and the question to be considered is this: Is there at this time a sufficient reason for deporting him? As this defendant came here with the permission of the agents, delegated by the government to grant or refuse that permission, it cannot be said that his entry into the United States was unlawful. His right to remain here must depend upon the question of fact whether or not he belongs to the prohibited class. Where a Chinese person produces a certificate, honestly obtained and free from jurisdictional defects, showing that he was allowed to enter the United States and supplements it by proof that he belongs to the class of Chinese persons who are permitted to come here, it is not easy to see upon what rule of right or theory of statutory interpretation he can be sent back to China. On the other hand, if in fact he belongs to the prohibited class and comes here intending to work as a laborer and does so work it seems clear that he should be sent back, even though his certificate conforms in every particular to the requirements of the law. To illustrate: Should it appear that a Chinese person admitted a year and a half ago is actually a student at Yale University, it would hardly be contended that he should be deported because his certificate states that he is "a reader of books" when it should have described him as a "student." On the contrary should it appear that a Chinese person, described as a student, on landing here begins to work as a common laborer and so continues to the present time there can be little doubt that he should be deported notwithstanding the fact that the certificate complies with all the minute requirements of the statute. It is thought that the defendant is and has been a merchant even within the strict definition of section 2 of the act of November 3, 1893 (28 Stat. 8). He is engaged in buying and selling merchandise at a fixed place of business, which business is, in legal effect, conducted in his name. It is not necessary that his name should appear in the firm designation. He has done no manual labor since he has been in this country. It is thought that these views are sustained by the following authorities: Lee Kan v. U. S., 10 C. C. A. 669, 62 Fed. 914; Lau Ow Bew v. U. S., 144 U. S. 47, 12 Sup. Ct. 517; Wan Shing v. U. S., 140 U. S. 424, 428, 11 Sup. Ct. 729; U. S. v. Chu Chee, 87 Fed. 312; U. S. v. Gee Lee, 1 C. C. A. 516, 50 Fed. 271; U. S. v. Ng Park Tan, 86 Fed. 605.

It is thought that nothing in the case of U. S. v. Yong Yew, 83 Fed. 832, is in conflict with these views. In that case the defendant by trickery and evasion secured entry into the United States as a merchant when in fact he was a laborer. He worked in a laundry continuously from the time of landing until he was arrested. As already stated the court is of the opinion that the plain purpose of the law cannot be evaded by such manifest artifice. The law should be construed to prevent fraud on the one hand and injustice on the other.

In order that there may be no misunderstanding the proposition decided by the court is restated as follows: A Chinese person, not a laborer, who has come here with a certificate properly signed and viséd and, after examination, has been permitted to enter the United States and has engaged in business here as a merchant for 17 months, cannot, in the absence of fraud, be deported, upon the ground that the certificate is incomplete and defective in matters of nomenclature and description. The order of the commissioner is reversed and the cause is remanded with instructions to discharge the defendant.