JEW SING v. UNITED STATES.

(District Court, W. D. Texas, El Paso Division. November 1, 1899.)

DEPORTATION OF CHINESE—EFFECT OF CERTIFICATE OF RESIDENCE.

A certificate of residence issued to a Chinese person under the act of May 5, 1892, as amended by the act of November 3, 1893 (28 Stat. 7), providing that "any Chinese person, other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence of such right, may apply for and receive the same without charge," is prima facie evidence of the right of the holder to remain in the country, of which right he can only be deprived by the courts upon clear proof that he has committed some act which would work its forfeiture.

This was an appeal by Jew Sing from an order of deportation made by a commissioner.

W. C. McGown and Beall & Kemp, for appellant.

Henry Terrell, U. S. Atty., and A. G. Foster, Asst. U. S. Atty.

MAXEY, District Judge. This case is before me on appeal from the order of the United States commissioner at El Paso deporting the appellant, Jew Sing, to China, for being unlawfully in the United States. Sing is a Chinaman, and had upon his person when arrested a certificate of residence, in the usual form, issued to him as a general merchant on the 2d day of March, 1894, at San Francisco, by O. M. Welborn, who was then collector of internal revenue of the First district of California. The certificate was admitted by the district attorney to be genuine, and to have been duly issued to the appellant. A full description of the appellant, including his occupation as a general merchant, is given in the certificate, which also contains the following recital:

"This is to certify that Jew Sing, a Chinese person, other than a laborer, now residing at San Francisco, has made application, No. 6,205, to me for a certificate of residence under the provisions of the act of congress approved May 5, 1892; and I certify that it appears from the affidavits of witnesses submitted with said application that said Jew Sing was within the limits of the United States at the time of the passage of said act, and was then residing at San Francisco, California, and that he was at that time lawfully entitled to remain in the United States."

It bears upon its face the following indorsement in red ink: "Issued under amendatory act of November 3, 1893;" and the photograph of appellant is pasted upon the certificate. He was arrested on the 8th day of August, 1899, by virtue of a warrant issued by the commissioner on that day, based upon an affidavit made by Charles Mehan, a Chinese inspector at El Paso. The question of fact in the case was whether the appellant, while residing in the United States as a general merchant, had visited the republic of Mexico, and clandestinely returned without complying with the provisions of the third paragraph of section 2 of the act of 1893. If it be conceded, as the district attorney insists, that the appellant was in Juarez, Mexico, on the 28th day of July, 1899, and that he re-entered the United States without making the proof required by that act, the important question of law would arise, whether the paragraph of the act referred to

applied to Chinese merchants who were residing in the United States at the date of the passage of the act, or was applicable to those only who might come into the United States for the first time since that date. Atty. Gen. Olney, in two opinions, held that the act applied exclusively to Chinese merchants who come into this country for the first time subsequent to the passage of the act. In concluding his first opinion he said:

"I am constrained to the conclusion, therefore, that this third paragraph of section 2 of the act of November 3, 1893, is to be regarded as wholly prospective in its operation, and as applying exclusively to Chinese merchants who both come into the United States for the first time since November 3, 1893, and, having carried on business here, afterwards leave the country and seek to return. Merchants already here when the statute took effect may leave the country and return as if the act of November 3, 1893, had not been passed." 21 Op. Attys. Gen. 21; Id. 99.

A contrary view, however, seems to have been taken, under somewhat differing facts, by the circuit court of appeals for the Ninth circuit, and by Judges Morrow and Welborn. Lew Jim v. U. S., 14 C. C. A. 281, 66 Fed. 953; Lai Moy v. U. S., 14 C. C. A. 283, 66 Fed. 955; In re Yee Lung (D. C.) 61 Fed. 641; In re Loo Yue Soon (D. C.) 61 Fed. 643; U. S. v. Loo Way (D. C.) 68 Fed. 475.

Just what view of the question of law this court would be inclined to adopt, it is not necessary in the present case to determine, for the reason that the order of deportation made by the commissioner must be reversed upon the facts. The certificate of residence was issued to the appellant, as a merchant, under the sixth section of the act of May 5, 1892, as amended by the act of November 3, 1893, which provides, among other things, as follows:

"And any Chinese person, other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence of such right, may apply for and receive the same without charge." 28 Stat. 7.

Certificates issued under the act have a meaning and value. They are the evidence of the right of the holder to remain in the country. The right thus conferred is a valuable one, to be taken away by the courts only upon clear proof that the holder has committed some act which would deprive him of the privilege of remaining in the United States. The certificate makes out a prima facie case in behalf of the right to remain. To overcome the presumptions arising from the possession of the certificate, the testimony should be clear and convincing, and until the government has made out such a case the holder of the certificate is not required to make further proof. In this case it is contended by the district attorney that the appellant has forfeited his right to reside in the United States by crossing the river into Mexico and clandestinely returning. Has the government clearly shown that the appellant was ever in Mexico? The testimony of Mehan, who was the only witness offered in behalf of the government, falls short of clearly showing that the appellant was the man whom he saw at Juarez with two other Chinamen on the 28th of July. Mehan admitted that he would be unable to identify either of the other two men. He admitted further that he neither recognized nor identified the appellant when he arrested him at

El Paso about 10 o'clock on the morning of the 5th of August at the instance of the Arizona sheriff, and it was not until the afternoon of that day or the next morning that the appellant was recognized by him. It is also shown that the Arizona sheriff mistook the appellant for another Chinaman whom he was endeavoring to arrest for theft, and detained him in custody two or three days upon the supposition that the appellant was the thief. Inspector Mehan doubtless in good faith believed that the man whom he saw at Juarez was the appellant, but a careful analysis of the stenographic notes of the testimony leads to the conclusion that he may have been, and probably was, mistaken. The evidence in this case is not sufficient to justify the court in holding that the appellant has committed any act which would operate as a forfeiture of his right to remain in the country. The order of deportation should therefore be reversed, and the defendant discharged, and it is so ordered.