## In re CHIN ARK WING.

### (District Court, D. Massachusetts. May 12, 1902.)

### No. 1,323.

1. CHINESE LABORER—REGISTRATION—PROCEEDING TO DEPORT—JURISDICTION.
    Under 27 Stat. 25, and 28 Stat. 7, providing that a Chinese laborer proceeded against for remaining in the United States without being registered shall be taken before a United States judge, such a laborer was first taken before a commissioner, where the testimony was taken

without objection. From his decision such laborer appealed to the judge, making no objections to the findings of facts. *Held,* that he thereby impliedly assented to a hearing before the judge on an agreed statement of facts, and the court had jurisdiction, whether it be considered an original proceeding, or as an appeal from the commissioner.

**2.** SAME—LABORER'S CERTIFICATE—INABILITY TO OBTAIN—MERCHANT.

Acts 1892, § 6 (27 Stat. 25) as amended by Acts 1893 (28 Stat. 7), provides that a Chinese laborer found in the United States without a laborer's certificate shall be deported on failure to obtain such certificate within a certain time after the passage of the act unless by reason of accident, sickness, or some unavoidable cause, he was unable to secure his certificate. A Chinese merchant, lawfully in the United States from 1892 to 1894, afterwards became a laborer. *Held,* that he could not thereafter be deported, since he was not able to procure a certificate within the time stated in such act; not being at the time a laborer, and entitled to a laborer's certificate.

Appeal from United States Commissioner.

Fuller C. Smith, for Chin Ark Wing.

William H. Garland, Asst. U. S. Atty.

LOWELL, District Judge. The facts in this case are found by the commissioner as follows:

"The defendant arrived in the United States in the year 1882, and was employed as a laundryman during a period of nine years thereafter. Eleven years ago he became a merchant, and was engaged in trade during a period of seven years, as one of the firm doing business in Oxford street, Boston, until the building in which the firm did business was torn down, since when, and during the last four years, the defendant has been employed as a laundryman, and was so employed when arrested on the complaint made in this case."

The defendant first objects that the proceedings before the United States commissioner were void, because the act of November 3, 1893 (28 Stat. 7), and section 6 of the act of May 5, 1892 (27 Stat. 25), provide that the Chinese laborer proceeded against shall be taken before "a United States judge." It is certainly a considerable stretching of language to hold that a United States commissioner is "a United States judge," especially as the two are differentiated in other parts of the act. But section 3 of the act of 1892 seems to contemplate that the commissioner shall have jurisdiction over all cases arising under the act. This practice is in favor of the defendant, who thus gets the benefit of two hearings, instead of one. If the commissioner holds him, he has an appeal to the judge on both facts and law. If the commissioner discharges him, he is quit altogether. This practice has always been followed in this district, and apparently in many others. To do away with it would impose an intolerable burden on the judge. It has been tacitly approved by the supreme court in Li Sing v. U. S., 180 U. S. 486, 21 Sup. Ct. 449, 45 L. Ed. 634. See, also, 31 Stat. 1093. Moreover, it is doubtful if the objection, which was not raised before the commissioner, can now be availed of. The defendant has been at last "taken before a United States judge." He has made no objection to the finding of facts by the commissioner, and thus has impliedly assented to a hearing before the judge on an agreed statement of facts. As this is not a criminal proceeding, I think this court has jurisdiction to deal with

his deportation, either as an original proceeding, or on appeal from the commissioner. It matters not which. See Chin Bak Kan v. U. S. (decided June 2, 1902) 22 Sup. Ct. 891, 46 L. Ed. ——.

We now come to the merits of the case. Prior to 1880 substantially all Chinese, laborers or others, were permitted to enter the United States and remain there. By the act of 1882, following upon the treaty of 1880, the coming of Chinese laborers to the United States was forbidden ("suspended"). Chinese laborers then in the country were not affected by the act or treaty. They might remain in the United States without more. They might depart from the United States and return thereto by going through certain formalities. Chinese, not laborers, might remain in the United States without formality, and might enter the United States for the first time by going through certain formalities. The commissioner's finding at the hearing before me was assumed to mean that Chin Ark Wing's original coming to the United States was lawful, and he must be taken to have arrived here before the act of 1882 went into effect. The act of 1892 required the registration within a certain time of all Chinese laborers then lawfully residing in the United States, and directed the deportation of every Chinese laborer who did not so register, "unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate, and to the satisfaction of the court, and by one at least credible white witness, that he was a resident of the United States at the time of the passage of this act; and if upon the hearing it shall appear that he is so entitled to a certificate, it shall be granted upon his paying the cost." All Chinese, not laborers, having a right to remain in the United States, were permitted to register, but not required to do so. The act of 1893 extended the time during which Chinese laborers might register. At the time of the passage of the acts of 1892 and 1893 the respondent was a merchant doing business in the United States, and entitled to remain here without registration. True, he might have registered, had he seen fit to do so, but the government does not contend that any certificate he could then have obtained would have protected him in this proceeding. It would have been a merchant's certificate, not a laborer's. The government's contention is briefly this: Congress intended to exclude all Chinese labor, except that actually in the United States. He who was a laborer might register and remain; but he who was lawfully here as a merchant, or as one of the other favored classes, could remain only upon the condition that he did not, by subsequent change of occupation, increase the number of Chinese laborers. If he became a laborer, the government contends he should be deported. This is not the natural interpretation of the Chinese legislation of the last 20 years, taken as a whole. The rights of all Chinese who are lawfully in the country at any time, to remain here thereafter, are carefully preserved. That a Chinaman who had the right in 1892 to be here as a laborer might remain here thereafter as a laborer, and that a Chinaman who was not a laborer in 1892 could by no means labor thereafter in the United States, is

a conclusion so strange that it should be rejected, unless required by language the most unambiguous. Section 6 of the act of 1892, as amended by the act of 1893, provides for the deportation of any Chinese laborer found in the United States without a laborer's certificate, "unless he shall establish clearly to the satisfaction of said judge that by reason of accident, sickness, or other unavoidable cause he has been unable to procure his certificate." If this section has any application to Chinese persons who were merchants in 1892–94, but became laborers thereafter, then such persons are within the express exception of the act, because they were unable in 1892–94 to obtain a laborer's certificate, by reason of an "unavoidable cause," viz., that they were not then laborers. The merchant's certificate, which they might have obtained, would, on the contention of the government, have done the respondent no good. Whether section 6 of the act of 1892 is in its nature wholly inapplicable to the respondent, or the respondent is saved from deportation by its express terms, need not be determined. The authorities, though neither numerous, nor, for the most part, explicit, support this conclusion. U. S. v. Sing Lee (D. C.) 71 Fed. 680, is admitted to be in point. In U. S. v. Chung Ki Foon (D. C.) 83 Fed. 143, it was held that one who had formerly been a merchant, but was a laborer in 1893, must register. The opinion of the court implies, perhaps not very strongly, that, if the respondent had changed his occupation after the opportunity for registration had ceased, he could not have been deported. In U. S. v. Moy Yim (decided in the district court for the district of Rhode Island, April 29, 1902) 115 Fed. 652, the learned judge seems to assume that a bona fide merchant in 1892–94, who has never left the United States, does not become liable to deportation by becoming a "laborer." It is not necessary now to determine if one who legally entered the country as a Chinese merchant after incoming laborers were excluded could change his occupation thereafter, and remain here as a laborer. In U. S. v. Yong Yew (D. C.) 83 Fed. 832, 838, it was intimated that he could do so, provided his original entry was made in good faith. But the supposed case is quite different from the case at bar, in which the respondent entered the United States when even laborers were admitted. U. S. v. Wong Ah Hung (D. C.) 62 Fed. 1005, decided merely that by the fact of imprisonment a "merchant" was transmuted into a "laborer," and it has no bearing on the case at bar. If a Chinaman laboring without a certificate at the time of his arrest seeks to avoid deportation by setting up that he was a merchant in 1892–94, doubtless "the facts should be carefully scrutinized." U. S. v. Yong Yew (D. C.) 83 Fed. 838. See U. S. v. Ng Park Tan (D. C.) 86 Fed. 605; U. S. v. Lee Pon (D. C.) 94 Fed. 824. Here the findings of fact made by the commissioner are not challenged.

Respondent discharged.