### UNITED STATES v. FONG FOO.

(District Court, N. D. Iowa, C. D.  September 1, 1916.)

ALIENS &⇒24—DEPORTATION OF CHINESE—CHANGE OF STATUS.

    A Chinese person, who, as found by the immigration officers, was a merchant at the time of going from the United States to China on a visit, and was readmitted as such on his return, but who until a year or two before going had been a laborer, and again became one on his return, from that

time reverted to his former status of laborer, and, not having obtained the certificate of residence required by Exclusion Act May 5, 1892, c. 60, § 6, 27 Stat. 25, as amended by Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 (Comp. St. 1913, § 4320), at which time he was a laborer domiciled in the United States, is subject to deportation under said acts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 76–78; Dec. Dig. ☛24.]

Proceeding for deportation by the United States against Fong Foo. From an order of deportation, defendant appeals. Affirmed.

The defendant Fong Foo was charged, in an information filed before a United States commissioner in this district, with being a laborer at Lake City, Calhoun county, Iowa, without a certificate of residence, as required by section 6 of the act of Congress approved November 3, 1893, and upon a hearing before the commissioner was ordered deported to China, and he appeals, as authorized by section 13, c. 1015, Act Sept. 13, 1888, 25 Stat. 479 (United States Compiled Statutes 1913, § 4313).

Kenyon, Kelleher & Price, of Ft. Dodge, Iowa, for appellant.

F. A. O'Connor, U. S. 'Atty., of New Hampton, Iowa, and Charles A. Lich, of St. Louis, Mo., representing the Bureau of Immigration.

REED, District Judge. Upon the information filed against him the appellant was arrested and committed to jail; later he was admitted to bail in the sum of $1,000, and afterwards taken before the commissioner and given a hearing, at the conclusion of which the commissioner recites:

"And upon a full hearing and consideration of the matter, I find that defendant is a Chinese subject, that on the 6th day of November 1914, he was found engaged as a laborer at Lake City, Iowa, in said district, and not possessed of a certificate of residence, or entitled to one as required by law, and is unlawfully in the United States and not entitled to remain therein; and it is therefore ordered, adjudged, and decreed that the defendant, Fong Foo, be deported from the United States to China."

The information is quite indefinite, but no objection is made thereto. The Chinese Exclusion Acts of Congress are set forth in volume 2, United States Compiled Statutes of 1913, beginning at page 1735 (section 4290 et seq.). The information is based upon section 6 of the act of Congress approved May 5, 1892, as amended by Act November 3, 1893, c. 14, § 1 (United States Compiled Statutes 1913, § 4320), which amendment, so far as material, provides that it · shall be the duty of all Chinese laborers within the limits of the United States, who were entitled to remain therein before the passage of the act to which this is an amendment, to apply to the collector of internal revenue of the respective districts within six months after the passage of this act for a certificate of residence; and any Chinese laborer within the limits of the United States, who shall neglect or refuse to comply with the provisions of this act and the act to which this is an amendment, or who, after the expiration of said six months, shall be found within the jurisdiction of the United States without such certificate, shall be deemed and adjudged to be unlawfully within the United States, and may be arrested and taken before a United States judge, whose

duty it shall be to order that he be deported from the United States,. as provided in this act and in the act to which this is an amendment, unless he shall establish clearly, to the satisfaction of said judge, that he has been unable to procure such certificate, and by at least one credible witness, other than Chinese, that he was a resident of the United States on May 5, 1892; and if, upon the hearing, it shall appear that he is so entitled to a certificate, it shall be granted upon his paying, the cost; and any Chinese person, other than a Chinese laborer, having a right to be and remain in the United States, desiring such certificate as evidence of such right, may apply for and receive the same without charge; and that no proceedings for a violation of the provisions of said section six of the act of May 5, 1892, as originally enacted, shall hereafter be instituted, and that all proceedings for said violation now pending are hereby discontinued.

Section 2 (Comp. St. 1913, § 4324), provides:

"The words 'laborer' or 'laborers,' wherever used in this act, or in the act to which this is an amendment, shall be construed to mean both skilled and unskilled manual laborers, including Chinese employed in mining, fishing, huckstering, peddling, laundrymen, or those engaged in taking, drying, or otherwise preserving shell or other fish for home consumption or exportation. The term 'merchant,' as employed herein and in the acts of which this is amendatory, shall have the following meaning and none other: A merchant is a person engaged in buying and selling merchandise, at a fixed place of business, which business is conducted in his name, and who during the time he claims to be engaged as a merchant, does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant. Where an application is made by a Chinaman for entrance into the United States on the ground that he was formerly engaged in this country as a merchant, he shall establish by the testimony of two credible witnesses other than Chinese the fact that he conducted such business as hereinbefore defined for at least one year before his departure from the United States, and that during such year he was not engaged in the performance of any manual labor, except such as was necessary in the conduct of his business as such merchant, and in default of such proof shall be refused landing."

By section 7 of the act of May 5, 1892 (Comp. St. 1913, § 4321), the Secretary of the Treasury was required to make reasonable rules and regulations for the efficient execution of the act. Later the powers, duties, and authority of the Secretary of the Treasury were conferred upon the Secretary of Commerce and Labor, and after the creation of the Department of Labor upon the Secretary of Labor.

That the appellant is a person of the Chinese race is not disputed; and he testified in his own behalf upon the hearing before the commissioner through an interpreter substantially as follows:

"My name is Fong Foo. I am 51 years old. Was born in San Francisco. My father's name was Fong Sing; mother's name, Jenge Shee. They are both dead; died in China. I was a little over ten years old when I last saw them. I was working as a laborer at that time in San Francisco. Went to China in K. S. 33 (1907). Remained there a little over a year. Never was there at any other time. Came back to San Francisco. Never was out of United States at any other time. Lived when a boy in San Francisco. There are no persons living that I know of in San Francisco, who knew me when I was a boy. Worked in San Francisco for years and years. First went into firm of Quong Wo On & Co., about a year before I went to China. Put $600 into the company that I had saved by working as a laborer. Was salesman and assistant bookkeeper in the firm. Lived during that time in rear of the store.

Did no other work in the firm. Lived during that time in the rear of the store. There were seven or eight partners in the firm. Do not remember all their names. Was there a little over a year, and then went to China. Went to China to get married, and did get married. When I went I intended to return to the United States. Got papers from immigration officers at the port before I went. When I got back from China, I was examined by the immigration officers and got from them this paper marked 'Exhibit A.' When I got back from China a new firm was organized, and was located on Dupont street, San Francisco. Was staying around there about a month, but did not work for the firm. I had no money to put in the new firm. There was about $2,500 in accounts due the old firm, but I couldn't get anything. After about a month I left San Francisco and came to Garner, Iowa. Lived there about a year, and came to Lake City, and have been there ever since, about four years. I know Chin Mon Ho, whose deposition was read. Knew him in Oakland, Cal., where our store was. He has been in our store there, and I have been in his store there in Oakland. I have written to him, and he has written to me. I sent him money to send to China for me. The checks shown me are checks I sent to Chin Mon Ho to send to China. (Checks marked 'B' and 'C.') Chin Mon Ho is manager of Sang, Chung, Lung Co."

### Cross-Examination.

"I lived at Lake City, Iowa, when I was arrested. I own a laundry in that city. I returned from China in June, 1909. I worked about a month in San Francisco at the place the firm had changed to; before I left for China, the firm was located at Oakland, Cal., at 365 Ninth street. I became a member of that firm, the Quong Wo On & Co., in 1906. Have been a laundryman for five years, since returning to the United States. Was a laborer prior to 1906. Was never a merchant before 1906. I was in San Francisco in 1892, 1893, and 1894. At that time I was working in a grocery store, for the Ching Woo Company. Never acquired any interest as a merchant until that with Quong Wo On & Co. in 1906. Was examined by the immigration officers on my return to the United States. Do not remember of saying at that examination that there was 14 members in the firm of Quong Wo On & Co., to which I belonged. Did not say that before that I was a member of the firm of Yee Wo & Co., 921 Dupont street, San Francisco. Have no certificate of residence. If I got one it would be destroyed by the earthquake. I expected the earthquake. I was ten years old when my parents left for China. They did not leave me in the care of any one. My parents died in China. I was probably 17 or 18 years old when they went back to China. I was born at San Francisco, at 728 Dupont street. It was a three-story brick building. I was born in a room on the third story. My wife is in China. Have one brother. Do not know where he is. Do not know where any one lives that remembers me when I was young."

Three questions are presented for determination: (1) Was the appellant born in the United States? If he was, of course, he cannot rightly be deported. If he was not, then (2) Was he a merchant at the time he went to China in 1907, intending to return to the United States? If he was, then, upon compliance with the regulations of the Immigration Bureau, he had the right to re-enter the United States as a merchant upon his return from China. (3) What was his status at the time of his arrest at Lake City, in 1914? Of those, in their order:

1. No other witness came to testify directly as to the place of appellant's birth. There is, however, among the papers transmitted to this court by the commissioner, what purports to be a copy of the record of births kept under the provisions of the Political Code of California, which shows that a Chinese person by the name of Fong Foo Gong was born in the city and county of San Francisco April 6, 1875; that his father's name was Fong Sing, his mother's name Jenge Shee,

both natives of China; the occupation of the father is given as a merchant, of 722 Dupont street, San Francisco; the residence of the parents is given as at the same place. This paper appears to have been recorded in 1898, is not authenticated as required by section 906, Revised Statutes of the United States, nor does it appear how the same came before the commissioner; but if the paper was properly authenticated and offered in evidence before the commissioner, and is genuine, it would show that the appellant is some 10 years younger than he says he is; more than this, if the appellant was born in San Francisco in 1875, as appears by this paper, or by his own statement, and has lived in the United States all of his life, except the short time he says he was in China, it is strange that he should be unable to speak the English language sufficiently plain to testify without an interpreter. This might be possible, but it is hardly probable. If he was born in the United States, he could not, of course, be rightly deported; but, without further considering the testimony as to the place of his birth, it must suffice to say that it fails to show with the required certainty that he was born in the United States.

2. Was the defendant a merchant within the meaning of section 6 of the Act of November 3, 1893, when he went to China?

The testimony in behalf of the defendant shows without substantial dispute that for more than a year before he went to China he became a partner in the firm of Quong Wo On & Co., merchants engaged in the clothing and dry goods business at 365 Ninth street, Oakland, Cal., prior to the earthquake of April, 1906; and when he went to China in the fall of 1907 (K. S. 33) he made to the proper immigration officer at San Francisco an application as follows:

"In order to comply with the requirements of Treasury Decision No. 22,050, which provides that the departing Chinese merchant shall furnish the Commissioner of Immigration with evidence that he is a merchant, and that said evidence may be investigated prior to his departure, so that his right to re-enter as a Chinese merchant may be established:

"Therefore I, Fong Foo, merchant, do solemnly swear: That I am a merchant and a member of the firm of Quong Wo On & Co., dealers in clothing and dry goods, doing business at No. 365 Ninth street, city of Oakland, county of Alameda, state of California. That my interest in said firm is six hundred dollars ($600.00). That I have been a merchant and a member of said firm for more than one year last past, and that during said period I have not performed any manual labor, except such as was necessary in the conduct of my business as such merchant. That I have had attached hereto a statement subscribed and sworn to by white witnesses certifying that they know me to be a merchant. I further certify that the photograph attached to the first affidavit in this certificate is a correct likeness of myself at the present time.
"[Signed] Fong Foo.
"[In writing and in Chinese characters above the writing.]
"Subscribed and sworn to before me this 14th day of October A. D. 1907.
"[Seal] Charles D. O'Connor, Notary Public."

Three witnesses (white) also made the following affidavit:

"Whereas, Fong Foo, whose photograph is hereto attached, is about to depart for China intending to return to the United States:

"Now, therefore, for the better identification of the said Fong Foo, and in order to facilitate his landing upon his said return, we, the undersigned, do hereby certify and declare under oath, each for himself and not one for the other, that we have known the said Fong Foo as a resident of state of Cali-

fornia for the number of years set opposite our respective names; that he is by occupation a merchant in good standing, engaged in buying and selling merchandise at a fixed place of business, to wit, as a member of the firm of Quong Wo On & Co., dealers in clothing and dry goods, doing business at No. 365 Ninth street, in city of Oakland, county of Alameda, state of California; and that he now resides thereat and does not engage in the performance of any manual labor, except such as is necessary in the conduct of his business as such merchant, and that he has been engaged in such business as such merchant for more than one year last past."

Signed and sworn to before a notary public October 14, 1907, by Joseph Jacoby, 379 Ninth street, J. C. Gambo, 22 Eighth street, and A. Soloman, 525½ Twenty-Third street. Photograph attached. Indorsed upon these affidavits are the following words:

"Departed from San Francisco, per steamer Manchuria, October 24, 1907. [Signed by an inspector.]"

On his return from China in June, 1909, he was again examined before the immigration office in San Francisco, and two white witnesses each testified that he had known the defendant for a number of years, and that he had been a merchant in the firm of Quong Wo On & Co., 365 Ninth street, Oakland, Cal., for a year prior to his going to China in October, 1907.

All the testimony, other than that of the appellant, was taken by deposition in San Francisco, at the taking of which inspectors and interpreters from the Chinese Bureau of the Immigration Station at San Francisco were present, and no effort has been made to controvert the same. From this testimony and that of the appellant it appears that it was established to the satisfaction of the proper immigration officers at San Francisco, when he departed for China, that he was then a merchant within the meaning of section 6 of the act of May 5, 1892, as amended by the act of November 3, 1893, and also that in June, 1909, when he returned to San Francisco, he was then entitled to re-enter the United States, and was permitted by the immigration officials to and did re-enter the United States at San Francisco. These findings are conclusive of the right of the defendant to enter the United States in June, 1909. United States v. Sing Tuck, 194 U. S. 161, 168, 169; 24 Sup. Ct. 621, 48 L. Ed. 917; United States v. Ju Toy, 198 U. S. 253, 261, 25 Sup. Ct. 644, 49 L. Ed. 1040.

3. What, then, was the status of the appellant after he re-entered the United States in June, 1909? Undoubtedly he was admitted because of being a merchant when he departed for China in 1907; and if he had followed that occupation after returning to the United States, it may be doubtful, at least, if he could now be deported. The appellant admits that in the years 1892, 1893, 1894, and prior to 1906, when he joined as a partner the mercantile firm of Quong Wo On & Co., in Oakland, he was a laborer. For some reason that firm closed its business when appellant was in China, and when he returned in 1909 the remnant of its property, wherever it was, had been moved to San Francisco, and the firm reorganized as a new firm under the name of Wing Wo On & Co., of which appellant says he was not a member, and to which he contributed nothing. After his return to San Francisco he stayed with the new firm for a short time, trying to settle or

collect his interest in the old firm, but was not successful, and within a month he left San Francisco. He was next heard from, so far as the testimony shows, at Garner and Lake City, in this district, where he was arrested upon the information filed in this proceeding.

There is no claim that, after he left San Francisco in 1909, he has been engaged as a merchant, or in any other occupation than that of a laborer, and claims that, when arrested, he owned a laundry in Lake City. As he was a laborer when first in the United States, so far as shown by the testimony, and up to 1906, when he invested in the firm of Quong Wo On & Co., his status passed from that of a laborer to that of a merchant, either in, or prior to, 1906. When he lost his interest in that firm, and he did not again engage in the business of a merchant, his status reverted to that of a laborer, which has been his occupation since he left San Francisco in 1909. As he is not a citizen of the United States, and cannot become one, and has no certificate of residence as required by the Exclusion Act, he has since leaving San Francisco been unlawfully in the United States, and subject to deportation. See United States v. Yong Yew (D. C.) 83 Fed. 832.

The commissioner, therefore, rightfully ordered his deportation to China, and that order must be and is affirmed; and it is accordingly so ordered.