In re YEW BING HI.

(District Court, D. Massachusetts. January 27, 1904.)

No. 1,533.

1. CHINESE EXCLUSION ACTS—PERSONS ENTERING LAWFULLY—CHANGE OF OC-
CUPATION.

A Chinaman, who has lawfully entered the United States as a merchant, and has lawfully practiced his calling here for some time thereafter, but who is not a merchant at the time of his arrest, is not subject to deportation under existing statutes.

William H. Garland, Asst. U. S. Atty.
John L. Dyer, for defendant.

LOWELL, District Judge. The commissioner has found that the respondent entered the United States lawfully as a bona fide merchant in 1897, having a consular certificate issued in pursuance of section 6 of Act July 5, 1884, c. 220, 23 Stat. 116 [U. S. Comp. St. 1901, p. 1307]. As he saw and examined the witnesses, I accept this finding, and also his further finding that the respondent has since ceased to be a merchant. It seems that he was a merchant for some time after his arrival in the United States, but that he had ceased to be a merchant, and probably had become a laborer, months, if not years, before he was arrested. The question presented is one of law. Is a Chinaman, who has lawfully entered the country as a merchant, and has lawfully practiced his calling here for some time thereafter, but who is not a merchant at the time of his arrest, subject to deportation under the treaties and statutes? Speaking generally, the Chinese exclusion acts are directed to prevent the unlawful coming of Chinese into the United States, and to remove those who have come in unlawfully. Though the Treaty of 1880, art. 1 (22 Stat. 826), gives the United States the right to regulate, limit, or suspend "such coming or residence," yet the acts of 1882 (Act May 6. 1882, c. 126, § 1, 22 Stat. 58 [U. S. Comp. St. 1901, p. 1305]) and 1884 affected only "coming." So the act of September, 1888 (Act Sept. 13, 1888, c. 1015, § 2, 25 Stat. 476 [U. S. Comp. St. 1901, p. 1312]), by its title, and the act of October, 1888 (Act Oct. 1, 1888, c. 1064, § 1, 25 Stat. 504 [U. S. Comp. St. 1901, p. 1318]), by its provisions, are limited in their prohibitions to Chinamen unlawfully coming into the United States. Section 1 of the latter forbids to remain in the United States only those Chinese laborers who shall have returned to the United States after the passage of the act. Thus far no indication appears that a Chinaman who has lawfully entered the United States may not change his occupation after entry without risk of deportation. The acts of 1892 (Act May 5, 1892, c. 60, § 6, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1321]) and 1893 (Act Nov. 3, 1893, c. 14, § 1, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1321]) by their titles prohibit only "the coming of Chinese persons into the United States." It is true that section 6, both in its original and amended form, provides for the deportation of any Chinese laborer who

¶ 1. Citizenship of Chinese, see notes to 1 C. C. A. 212, 35 C. C. A. 332.

shall be found within the United States without a certificate of registration; but in the case of Fong Yue Ting v. United States, 149 U. S. 698, 725, 13 Sup. Ct. 1016, 37 L. Ed. 905, the court said that the act "deals with two classes of Chinese persons: First, those 'not lawfully entitled to be or remain in the United States'; and, second, those 'entitled to remain in the United States.' These words of description neither confer nor take away any right; but simply designate the Chinese persons who were not or who were authorized or permitted to remain in the United States under the laws and treaties existing at the time of the passage of this act, but subject, nevertheless, to the power of the United States absolutely or conditionally to withdraw the permission and to terminate the authority to remain." The act is thus held to concern only those Chinamen who were in the United States at the time of its passage. The substantive rights of these persons were not affected. Those who were entitled to remain before the passage of the act were entitled to remain thereafter, although in some cases registration was made the necessary evidence of their right to remain. Those not required to register were unaffected by the act, except that new procedure and new rules of evidence were established applicable to all proceedings for deportation. If those Chinamen who were not required to register (such as merchants, during the registration period—In re Chin Ark Wing [D. C.] 115 Fed. 412—and Chinamen born in the United States) may not be deported, though found as Chinese laborers without certificates, it seems that those who lawfully entered the United States as merchants after the period of registration, and later became laborers, are also without the purview of the exclusion acts. This conclusion is not affected by Act April 29, 1902, c. 641, 32 Stat. 176 [U. S. Comp. St. Supp. 1903, p. 188]. Taken as a whole, the legislation appears not to intend the deportation of any Chinaman who lawfully entered the United States, and, since his entry, has complied with every applicable provision of statute. That the intent of Congress is thus correctly interpreted the court cannot pretend to be sure, so numerous and confused are the existing statutes, but the construction given is that which appears most generally consistent with the language and intent of the several acts and treaties. It may be urged that this construction tends to encourage fraudulent entry, the Chinese immigrant asserting that he is a merchant, though in reality a laborer. The observation has weight, and the courts will scrutinize with care evidence tending to show that a Chinaman who is a laborer at the time of his arrest was a merchant at the time of his entry into the country. U. S. v. Yong Yew (D. C.) 83 Fed. 832, 838. The learned commissioner has given this careful scrutiny to the evidence in the case at bar, and in accordance with his findings of fact the respondent must be discharged.