### UNITED STATES v. JOE DICK.

(District Court, E. D. Pennsylvania. February 4, 1905.)

1. CHINESE EXCLUSION—MINOR SON OF MERCHANT—EFFECT OF FATHER'S RETURN TO CHINA.

A Chinese minor lawfully entering the United States as the son of a Chinese merchant domiciled in this country lost such status on the return of his father to China to remain permanently, leaving the son, who was still a minor, in this country, and his status thereafter was determined by his own occupation.

[Ed. Note.—Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

2. SAME—REGISTRATION ACTS—EFFECT OF LABORER'S MINORITY.

The fact that a Chinese laborer was a minor 19 or 20 years old at the time of the passage of the registration acts did not exempt him from the duty of registering thereunder.

Appeal from Order of Deportation.

J. Whitaker Thompson and Jasper Yeates Brinton, for the United States.

Fred Taylor Pusey, for defendant.

J. B. McPHERSON, District Judge. Assuming the testimony offered in this case to be true, and regarding it in the light most favorable to the appellant, it establishes these facts: Joe Dick was born in China in 1874. In the same year his father, Joe Kin, came to the United States, and either then or soon afterwards began trading as a merchant in San Francisco. In 1882 the father sent for his son, and the boy was brought over by a cousin, Joe Sing, and went to live in his father's house and family. In 1886 the father sold out his interest in the business, left the country permanently, and went back to China, where he has since remained. Joe Dick declined to accompany his father, and, being thrown upon his own resources, began at once to earn his living by manual labor; first as a farm hand in California until 1898, and since that time as a laundryman in the city of Philadelphia. He knew that laborers were required to register by the acts of 1892 and 1893, but did not ask for a certificate, his only excuse being that he "did not have any money then." In these years he was 18 and 19 years old.

The government concedes that if, when the acts of 1892 and 1893 were passed, the appellant was privileged to remain in this country as the minor son of a Chinese merchant, he is not now liable to deportation, since, to quote from the government's brief, "it was evidently not the intention of the registration acts to require those to register who in the eye of the law were not laborers at the date of the passage of the acts." The crucial fact, as it seems to me, in determining how far the

appellant was privileged at the date of the registration acts, is his father's return to China with intent to remain in that country, and his actual residence there from 1886 to the present time. What effect did this severance of the actual family relation have upon the appellant's status? He came into the country lawfully as the minor son of a resident merchant (United States v. Gue Lim, 176 U. S. 468, 20 Sup. Ct. 415, 44 L. Ed. 544), and, so long as that status continued he was entitled to remain. Whether he could have acquired an independent status for himself as a laborer during his minority, if his father had remained in the United States and had gone on with his business, need not be determined. The question now is whether his status as the minor son of a resident merchant continued during the rest of his minority, although his father had ceased to be a merchant, had broken up his household, had abandoned the support of his son, and left the United States without the intention to return? In my opinion, the appellant's privilege ended with the disappearance of the facts on which it was founded, and thereafter his status, for present purposes, was such as he himself chose to make it. His father emancipated him by the convincing act of turning him loose upon the world to shift for himself, and it would be anomalous, indeed, to hold that after such a rupture of the family relation the court must treat the relation as if it were still unimpaired. If the court is thus bound in spite of the truth, the fiction should also be applied under other circumstances, although the appellant, I suppose, would hardly contend that, if his father had been a laborer, his own status as a laborer's son (United States v. Chu Chee, 93 Fed. 797, 35 C. C. A. 613) would have persisted, although, after the father had gone away, the appellant had become a merchant, and was engaged in that business when the registration acts were passed. The case of United States v. Chung Shee (D. C.) 71 Fed. 278, is not in point. There a Chinese woman, having been refused permission to land, petitioned the District Court of Oregon for a habeas corpus, and upon the hearing was adjudged to be entitled to enter the country because she was the wife of a Chinese merchant. This was in 1894, and, after her husband's death a few months later, the question of her right to remain in the country without a certificate came before the District Court for the Southern District of California on her appeal from an order of deportation, and the court simply decided that the lawfulness of her residence in the United States was conclusively established by the former judgment. Nothing was discussed or decided except the extent to which the doctrine of res adjudicata should be applied. In United States v. Sing Lee (D. C.) 71 Fed. 680, it was held that a person who was a merchant when the act of May 5, 1892, c. 60, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1319], was passed was not liable to deportation because he became a laborer afterward. Similar facts existed in Re Chin Ark Wing (D. C.) 115 Fed. 412, and a similar ruling was made by Judge Lowell, who gave as the incontrovertible reason therefor that the appellant was prevented by an "unavoidable cause" from obtaining a laborer's certificate in 1892, because he was then a merchant, and not a laborer. The District Court of Montana in Louie Juen v. United States (D. C.) 128 Fed. 552, and the District Court for the Eastern District of Missouri in United States v. Leo Won Tong, 132 Fed.

190, reached the same conclusion. These four cases are obviously concerned with a change of occupation after registration, and have, therefore, little to do with the question now before the court, which simply is, what was the appellant's status or privilege when the registration acts were passed? The remaining case cited by the appellant's counsel upon this point is Re Yew Bing Hi (D. C.) 128 Fed. 319, but this, I think, is even less to the purpose, for it only decides that a Chinaman who entered the country as a merchant in 1897, but became a laborer afterwards, could not be deported, because the registration acts had omitted to provide for such a situation. No decision has been cited that is precisely in point, but the purpose of the registration acts, namely, to compel all Chinese laborers in the country to furnish evidence by which they could be identified, seems to be in harmony with the conclusion to which I feel obliged to come. Undoubtedly the appellant was a laborer in 1892 and 1893, and it would be the merest fiction to look upon him as a minor son in the household of his merchant father. He was in fact no longer in the household, but was making his own livelihood, and his father was no longer a merchant, nor even a resident in the United States. A similar question might arise concerning the domicile of a minor. Mr. Jacobs, in his excellent work on Domicile, thus speaks of it in sections 236, 237:

"The domicile of the child is necessarily that of the father, at least so long as the former remains in any manner under the guardianship and control of the latter.

"A case may be supposed, however, in which it would seem unjust to apply this general rule of derivation; e. g., where a father has abandoned his child, and has emigrated to a foreign country or a distant state. Under extreme circumstances in such a case a court might, and probably would, refuse to seek in a distant land a domicile for the child with a parent who had been faithless to parental duty, or, if it did recognize such domicile, refuse to attach to it the usual legal consequences."

It is argued further that the appellant's legal infancy in 1892 and 1893 was a valid excuse for not registering. The question was suggested briefly and passed over in Tsoi Sim v. United States, 116 Fed., on page 922, 54 C. C. A. 154, but is now presented for decision. Whether a laborer, who was a minor and living in the household of his father, who was also a laborer, was obliged to register as if he had been an adult, may be left for determination until such a case is presented. The laborer now before the court was near his majority; he had been given the privileges of an adult by his father, and been forced to take up an adult's burden; he was man enough to earn his own living, and intelligent enough to know that registration acts had been passed affecting the class to which he belonged. Under such circumstances I am at a loss to know upon what principle his exemption from the duty to register can be placed. The act says nothing about minors or adults. It is "laborers" that are referred to; and the presumption is, I think, that their age is a matter of no importance. Of course, the statute is to receive a reasonable construction. Very young or very old persons, incapable of "labor" in the ordinary meaning of that word, are probably not included, although they might be able to do some inconsiderable work with their hands. But when a youth has grown strong enough to do an adult's work, I see no reason why he should not be classed with

his companions in labor, although some of them may be his elder by several years. In my opinion, the test should be capacity, and not merely age.

The appellant asks also to be permitted to register now in case the court should decide against his present right to remain in the country. There are, however, two insuperable obstacles in the way of such permission: First, there is no evidence that "by reason of accident, sickness or other unavoidable cause, he has been unable to procure his certificate" (section 6, Act May 5, 1892, 27 Stat. 25 [U. S. Comp. St. 1901, p. 1320]); and, second, he has not proved by at least one credible witness other than Chinese, that he was a resident of the United States on the fifth of May, 1892 (Act Nov. 3, 1893, c. 14, § 6, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320]). All the witnesses before the commissioner and before the court were Chinamen.

The appeal must therefore be dismissed, and the order of deportation made by the commissioner is hereby affirmed.