### UNITED STATES v. YEE QUONG YUEN.

(Circuit Court of Appeals, Eighth Circuit. October 27, 1911.)

No. 3,496.

ALIENS (§ 24*)—CHINESE EXCLUSION ACTS—PERSONS SUBJECT TO DEPORTATION —MINOR SON OF CHINESE MERCHANT.

    The adopted son of a Chinese merchant, long in business in the United States, who was brought into this country while a minor by his father on returning from a temporary visit to China, and afterward himself engaged in business as a merchant, was lawfully in the United States, and did not lose such status, and become subject to deportation, because he afterward temporarily became a laborer.

    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 24.*

    What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the District of Colorado.

Habeas corpus by Yee Quong Yuen against the United States. From an order granting the writ, the United States appeals. Affirmed.

Ralph Hartzell, Asst. U. S. Atty. (Thomas Ward, Jr., U. S. Atty., on the brief), for the United States.

Before ADAMS and SMITH, Circuit Judges, and REED, District Judge.

ADAMS, Circuit Judge. This was an appeal from an order of the United States District Court for the District of Colorado discharging Yee Quong Yuen from imprisonment in the jail of the city and county of Denver to which he had been committed by the United States commissioner on a complaint that he was a Chinese laborer unlawfully within the United States. This boy was the natural son of a brother of Yee Ling Wing, and when only two months old was, in conformity to the laws and practices prevailing in China, duly adopted by the latter as his own son. He thereby, as is conceded by government's counsel, acquired all the rights and privileges of a natural son of his adoptive parent. The latter had resided in this country for many years, and had for some time been engaged in business as a merchant in Salt Lake City; but in 1908, upon being advised of the death of his wife, who had continued to reside in China with his adopted son, returned there, and soon after married another wife, and with her and the son, who was still a minor, returned to this country, landing at Seattle. He had the proper certificate of identification of himself as a merchant returning to the United States with his wife and minor son. They went forthwith to Salt Lake City, where the husband and father kept a Chinese provision store. Certain representations were made to him by a relative in Denver by the name of Yee Dot Toy to the effect that a dry goods business belonging to one Sue Ho Hong could be advantageously purchased and that he would join Wing in purchasing it for his son and himself. Negotia-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tions followed and resulted in a purchase, and Yee Dot Toy and Yee Quong Yuen commenced business there. It soon proved to have been a bad trade, and after losing some $200 the business was disposed of, and the boy, being without a home in Denver, went to a laundry, where he worked awhile for his board, waiting, as he and his father both testified, until some mercantile business of better promise than before could be found for him. While so waiting he was found by an immigration inspector and arrested. The boy's testimony was that his sole purpose in coming to this country was to engage in some mercantile pursuit, as his father had done, and this was corroborated by his father's testimony and by other circumstances.

On this state of facts the learned trial judge discharged the prisoner. This we think was right. He was a minor son of a Chinese merchant doing business in the United States, who had journeyed to China for a temporary purpose, but with the intention of returning. Upon his return he had a right to bring in his wife and minor children without the production of any certificate required by the sixth section of the act of July 5, 1884 (23 Stat. 115, c. 220 [ U. S. Comp. St. 1901, p. 1305]). The enjoyment of their society and the duty to care for and protect them were his by natural right and obligation. In the case of Chung Toy Ho (C. C.) 42 Fed. 398, 9 L. R. A. 204, it was said:

"It ought not to be lightly, or without cogent reason, concluded that Congress, in the passage of the act of 1884, professedly 'to execute' the treaty of 1880, really intended to limit or restrain its operation in this respect. The treaty (article 2 [22 Stat. 827]) declares that a Chinese merchant may bring his 'body and household servants' with him into the country, and they 'shall be accorded all the rights, privileges, immunities and exemptions which are accorded to the citizens and subjects of the most favored nation.' * * * The domicile of the wife and children is that of the husband, * * * and the concession to the merchant of the right to enter the United States, and dwell therein at pleasure, fairly construed, does include his wife and minor children."

This reasoning received the approbation of the Supreme Court in United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544, wherein it was definitely held that the wives and minor children of Chinese merchants domiciled in this country may enter the United States without certificate. Under these authorities there can be no doubt that the appellee lawfully came into this country.

But it is contended that the son abandoned his father as soon as he reached Salt Lake City, and entered at once upon the prohibited occupation of a laborer, and that for this reason he lost the status of his father and his right to remain in this country. The case of United States v. Yong Yew (D. C.) 83 Fed. 832, and United States v. Joe Dick (D. C.) 134 Fed. 988, are relied on to sustain this contention. The first-mentioned case discussed the evidence adduced with a view of determining the good faith of an entry as a merchant, and it was held that the prima facie value of the certificate of identification, there under consideration, was overcome by other facts of the case. Certainly that case affords no warrant for the contention that an entry made lawfully and in good faith can by subsequent conduct of the immigrant be held invalid and of no effect.

The other case presents this state of facts: Joe Kin came to this country in 1874 and began trading as a merchant in San Francisco. A few years later he caused his minor son, eight years old, to be brought over from China to him. The son lived in his father's family 3 or 4 years, when the father left the country permanently and returned to China, where he remained. The boy, then 11 or 12 years old, was thrown upon his own resources and began at once the career of a laborer. He never registered as required by the acts of 1892 and 1893, and was afterwards arrested for deportation as a laborer unlawfully within the United States. The concession was made that he came into the country lawfully as the minor son of a resident merchant, but the case turned on this question: Whether his status as minor son of such a merchant continued during the rest of his minority, although his father had ceased to be a merchant, broken up his household, renounced the support of his son, and left the United States without the intention of returning. It was held that he had lost his father's status, and that his own status was determined by his subsequent occupation.

Without intending to approve or disapprove the conclusion reached in that case, it is clear that it has little, if any, similarity to the one before us. The appellee's status and right of residence in this country were fixed by his lawful entry while a minor son of his father, who then resided here as a Chinese merchant. Presumptively this status and this right remained with him thereafterwards. His father was a merchant in Salt Lake City when the boy came. He has continued to be such a merchant from that day to this. He has never left the country with the intention of abandoning his business here, and has never returned to China with the intention of remaining there. His boy, although a minor when he landed on our shores, was old enough to begin his life's work, and the father, for reasons of his own, deemed Denver a more promising place for him than Salt Lake City, and established him in the business of a merchant at that place. He was unsuccessful. He did not abandon his father, nor did his father abandon or abdicate his duty of care and protection of him. While they were waiting after their first unsuccessful venture for an opportunity to engage in another business, the father supplied him with expense money. The worst of his offending was that he worked for his board at a laundry for a few months prior to his arrest, and while he and his father were attempting to find a new business for him. This state of facts, in our opinion, discloses no abandonment of the father's status, or no voluntary adoption of any new status by the son. Neither does it disclose any attempt at circumventing the laws of the United States respecting the exclusion of Chinese laborers.

So far as this record shows, the boy was lawfully in the United States at the time of his arrest, and the judgment of the District Court to that effect is affirmed.