McDONALD, Immigrant Inspector, v. SIU TAK SAM.

(Circuit Court of Appeals, Eighth Circuit. July 6, 1915.)

No. 4356.

1. ALIENS ⬤═32—DEPORTATION WITHOUT HEARING.

A Chinese cannot be deported as a laborer without being first given a hearing on the charge, since constitutional guaranties of life, liberty, and property are not restricted to citizenship, and before they can be adjudicated upon or taken away there must be a fair and impartial hearing by some tribunal established for the purpose.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95.; Dec. Dig. ⬤═32.]

2. ALIENS ⬤═32—DEPORTATION OF CHINESE—FAIRNESS OF HEARING.

Where an immigrant inspector took the ex parte statements of three Americans, who saw the Chinese claiming status as a merchant ironing in his cousin's laundry, the Chinese not being present when the statements were taken, or his counsel, and they not having been given a fair chance to be present, not being notified of the statements and their contents after they were taken, and time and opportunity not having been afforded them for investigation and refutation, the inspector at once making his certification to the Secretary of Interior for a deportation warrant, the Chinese was not given the fair hearing necessary to deportation.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤═32.]

3. ALIENS ⬤═32—DEPORTATION OF CHINESE—STATUS AS MERCHANT—SUFFICIENCY OF EVIDENCE.

In habeas corpus proceedings by a Chinese against an immigrant inspector to secure his release from custody under a deportation warrant, evidence *held* to show that such Chinese, since he had entered the country as a merchant, had maintained that status, and had not become a laborer.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⬤═32.]

Appeal from the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Habeas corpus by Siu Tak Sam against Brown McDonald, as Immigrant Inspector. Relator was discharged from custody, and respondent appeals. Affirmed.

Alfred Jaques, U. S. Atty., and Egbert S. Oakley, Asst. U. S. Atty., both of Duluth, Minn., for appellant.

John H. Norton, of Duluth, Minn., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and LEWIS, District Judge.

LEWIS, District Judge. This is an appeal from an order discharging the appellee from custody of the Immigrant Inspector who held

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

him under a Deportation Warrant. The action was taken by the District Court after hearing on return to the writ of habeas corpus.

The appellee was born in China, and is, therefore, an alien "Chinese person." He is now thirty-five years of age. He reached the Port of Seattle, State of Washington, and landed there September 30, 1912, and was admitted as a Chinese merchant under the provisions of Section 6 of the Act of May 6, 1882 (22 Stat. 60 [Comp. St. 1913, § 4293]). On April 4, 1914, the appellant, as immigrant inspector, found him at Hibbing, a village in St. Louis County, Minnesota, in the laundry of Shew Chong, another Chinese, who is a cousin of appellee. He was immediately taken in charge by the inspector, who wired to the Secretary of Labor for a warrant for his arrest. The warrant was issued that day and recited:

"That the said alien is a member of the excluded classes in that he was a person likely to become a public charge at the time of his entry into the United States; and that he is unlawfully within the United States in that he has been found therein in violation of the Chinese Exclusion Laws and is, therefore, subject to deportation under the provisions of Section 21 of the above-mentioned Act [Act Feb. 20, 1907, c. 1134, 34 Stat. 898, as amended by Act March 26, 1910, c. 128, 36 Stat. 263]."

The inspector thereupon placed the appellee in jail at Duluth. As required by the statute and also directed in the warrant of arrest, the inspector proceeded to a hearing on the charge as to whether he was subject to deportation. The hearing was begun at Duluth on April 20, 1914, before the inspector, and appellee was there represented by counsel. The only testimony taken at that time and place was given by the appellee, his cousin Shew Chong and one Sue Lung. Their testimony established conclusively that the appellee had been admitted as a Chinese merchant; that he was in fact theretofore a merchant in China; that in China he was considered a wealthy man; that his intention in coming to the United States was to continue in the business of a merchant; that since coming here he had not been a laborer; that he brought $1,000 with him, had received from China an additional $1,000 since he landed, of which sums he then had between $1,300 and $1,400.

It further appeared that during the year and a half the appellee had been in the United States he had spent a few days in Seattle and Portland, and the remainder of the time in Minneapolis and St. Paul, in all of which cities he was looking for an opportunity to engage in the business of a merchant.

The proprietor of the laundry in Hibbing was his cousin, and his purpose in being there was to make a visit and advise with him. He had only been at Hibbing two or three weeks when he was arrested. He had made a visit to his cousin at Hibbing sometime before that for the same purpose, remaining there only two or three weeks and returned to Minneapolis.

It further appeared from the testimony of appellee and the two Chinese witnesses above named, taken at Duluth on April 20th, that at the time the inspector entered the laundry at Hibbing and made the arrest on April 4th, the appellee was ironing some of his own clothing.

The evidence thus not only completely failed to establish the charges in the warrant:

"That the said alien is a member of the excluded classes in that he was a person likely to become a public charge at the time of his entry into the United States; and that he is unlawfully within the United States in that he has been found therein in violation of the Chinese Exclusion Laws,"

but on the contrary both charges were proven untrue.

When the hearing closed on that day, leaving the status of proof as above recited, the inspector gave verbal notice to appellee's attorney that:

"I expect to visit Hibbing, Minn., within the next few days, and that I expect to secure there sworn statements from Policeman David Williams, H. Z. Mitchell, city editor of the Hibbing Tribune, and Lee Johnson, messenger for the Merchants and Miners State Bank of Hibbing, to the effect that this Chinaman was working as a laborer in the Him Kee Laundry on Centre St., Hibbing, Minn., on April 4, 1914, about 10 o'clock A. M., when he was apprehended by me, and that these witnesses so saw him."

The Inspector then further stated, in substance, that he had no authority to issue subpœnas for witnesses either in behalf of appellant or appellee, but that the attorney of appellee had the right to come with him to Hibbing and question the witnesses after they had been questioned by him, and that any questions the attorney might put to the parties named and their answers would be taken down and made a part of the record. Appellee's attorney thereupon stated that he desired to go to Hibbing with the inspector but that he could not go for about a week. On April 23d, three days after the testimony was taken at Duluth and the understanding was had that further testimony would be taken at Hibbing a week or so later, the inspector called up the office of appellee's attorney and found that he was not in. He told the attorney's assistant that he would question the witnesses at Hibbing the next day and that either the attorney or his assistant could come along and meet him in Hibbing and be present at the examination. The assistant replied that appellee's attorney was otherwise engaged and could not go.

The inspector went to Hibbing without further notice, interrogated the parties named, ex parte as he reports, put down what he claims were the questions propounded and the answers given, all of which was certified to the Secretary as a part of the proceedings in the case. He also certified as a part of those proceedings what purports to be an examination in the form of questions and answers of one Mo Chong Way taken at Portland, Oregon, on April 21, 1914. The appellee was not present and not represented when that was done. This was also certified to the Secretary as a part of the hearing.

The warrant for the deportation of appellee was issued by the Secretary of Commerce and Labor of date May 26, 1914. It recites that it is based on the "proofs submitted to me, after due hearing before Inspector in Charge Brown McDonald, held at Duluth, Minnesota, * * * that the said alien is unlawfully within the United States in that he has been found therein in violation of the Chinese Exclusion Laws," and omits the other ground stated in the warrant of arrest, "That the said alien is a member of the excluded classes in that he

was a person likely to become a public charge at the time of his entry into the United States."

It thus appears that when the Secretary reviewed the record certified for the purpose of determining whether or not the deportation warrant should issue, he came to the conclusion that there was nothing to sustain the charge that appellee was "likely to become a public charge at the time of his entry into the United States." We, therefore, confine the inquiry to the other charge, i. e., Was appellee found in the United States in violation of the Chinese Exclusion Laws; was he a laborer? But before that inquiry is open for consideration, it must be determined whether the appellee had a fair hearing on that question. Chin Yow v. United States, 208 U. S. 8, 13, 28 Sup. Ct. 201, 52 L. Ed. 369.

1. As already pointed out, the hearing at Duluth on April 20th, consisted only of the testimony of the three Chinese, including appellee, and there is no proof whatever given at that time to establish the fact that appellee was a laborer. Neither does the ex parte proof taken at Portland on April 21st, have the slightest tendency to establish that fact. It, like that taken at Duluth, is to the contrary. The only other proof in the record consists of the ex parte statements of David Williams, the policeman, H. Z. Mitchell, the editor of a newspaper, and Lee Johnson, a bank clerk, all at Hibbing, taken by the inspector in the manner and under the circumstances above recited.

[1] The inspector in the taking of these statements pretended to administer an oath to each of the parties. He did the same thing when the three Chinese witnesses made their statements at Duluth on April 20th, and we have referred to what they said as testimony; but in the recent case of Whitfield, Inspector, v. Hanges, 222 Fed. 745, —— C. C. A. ——, decided by this court, it was determined that the inspector was without authority to administer an oath; however, it is unnecessary to give any consideration to that matter here. The opinion in that case considers at length and determines the necessary requisites to constitute a fair hearing in such a procedure as this, and it seems unnecessary to again repeat the requirements. An alien cannot be deported without being first given a hearing on the charge. He can no more be made the victim of arbitrary power than a citizen. Constitutional guaranties of life, liberty and property are not restricted to citizenship; and before they can be adjudicated or passed upon or taken away there must be a fair and impartial hearing by some tribunal established for that purpose. The Act of February 20, 1907, contemplates this and requires it (Section 20); likewise the rules made by the Secretary for the enforcement of the Act.

[2] We do not think the inspector, in taking the ex parte statements of the three men at Hibbing, gave to appellee a hearing within contemplation of general principles of jurisprudence protecting the rights of all men, within the Act under which the proceeding was had, or within the rules made and established by the Secretary for the guidance of the inspector. The appellee was not present when these statements were taken; his counsel was not present, and they were not given a fair chance to be present. In the light of the record both appellee and his counsel were denied a reasonable opportunity to be present, and

they were denied a chance to meet and rebut the substance of the statements made by the three men at Hibbing. Because, so far as the record shows, no communication was had with them about the statements and their contents after they were taken, no notice was given to them, and no time or opportunity afforded for investigation and refutation; but on the contrary the inspector at once made his certification to the Secretary for final action. And this was done in the face of the fact, then established, that appellee had been in Minneapolis and St. Paul at given addresses for sixteen or seventeen months just prior to the arrest, where evidence could most likely be had to definitely establish or refute the charge that he had voluntarily abandoned the status under which he was permitted to enter and had become a laborer. For more full consideration of the question see Whitfield, Immigrant Inspector v. Hanges, 222 Fed. 745, —— C. C. A. ——.

The appellee presented with his petition for the writ the entire proceedings taken by the inspector and certified and no other proof was adduced on the hearing before the District Judge on return to the writ.

[3] 2. The appellee was regularly admitted on certificate as a Chinese merchant. He had $1,000 on his arrival, and received from China some time later a remittance of an additional $1,000, and at the time of his arrest still had about $1,300 to $1,400. He had continued to seek, and was seeking at the time of his arrest, a place to locate as a merchant. He admitted that he was engaged in ironing some of his own clothing in the laundry of his cousin at Hibbing at the time of his arrest. Accepting the ex parte affidavits of Williams, Mitchell and Johnson for all that can be claimed for them, they add nothing to his admissions, except that Williams says there was a pile of freshly ironed shirts on the table, where appellee was standing with iron in hand, when he entered the laundry, and that he was dressed as if he were engaged in that sort of work. This evidence falls far short of establishing that appellee was at that time engaged as a laborer, especially so when taken in connection with the other testimony in the case.

In United States v. Yee Quong Yuen, 191 Fed. 28, 111 C. C. A. 500, this court had under consideration the inquiry as to whether a Chinese person, who had been brought to this country by his father, a Chinese merchant, had later become a laborer and subject to deportation. The son, with the assistance of his father, had purchased a drygoods establishment at Denver, but it was only continued for a short time. Judge Adams, speaking for the court, said:

191 Fed. 29, 111 C. C. A. 501: "It soon proved to have been a bad trade, and after losing some $200 the business was disposed of, and the boy, being without a home in Denver, went to a laundry, where he worked awhile for his board, waiting, as he and his father both testified, until some mercantile business of better promise than before could be found for him. While so waiting he was found by an immigration inspector and arrested. The boy's testimony was that his sole purpose in coming to this country was to engage in some mercantile pursuit, as his father had done, and this was corroborated by his father's testimony and by other circumstances. * * *"

191 Fed. 30, 111 C. C. A. 502: "While they were waiting after their first unsuccessful venture for an opportunity to engage in another business, the father supplied him with expense money. The worst of his offending was that he worked for his board at a laundry for a few months prior to his arrest, and while he and his father were attempting to find a new business for him.

This state of facts, in our opinion, discloses no abandonment of the father's status, or no voluntary adoption of any new status by the son. Neither does it disclose any attempt at circumventing the laws of the United States respecting the exclusion of Chinese laborers."

So here, there is but one rational conclusion that can be drawn on consideration of the entire record, including the ex parte statements, and that is that appellee, during the eighteen months that he had been in the United States, had constantly maintained the status under which he was permitted to enter, and had not at the time of his arrest become a laborer.

For these reasons we are of the opinion that appellee could not lawfully be deported, and the order discharging him from custody is

Affirmed.