### CHAN KAM v. UNITED STATES.

### Ex parte CHAN KAM.

(Circuit Court of Appeals, Ninth Circuit. May 15, 1916.)

No. 2482.

1. ALIENS ⬅32(8)—DEPORTATION—CHINESE PERSONS.

Where it was sought to deport a Chinese woman on the ground that she was guilty of prostitution, evidence *held* insufficient to establish the charge.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬅32(8).]

2. ALIENS ⬅32(12)—CHINESE PERSONS—DEPORTATION.

While the courts will not review the evidence upon which immigration officials ordered the deportation of a Chinese person, an order of deportation of one prima facie entitled to remain, which is based upon conjecture and without support of competent evidence, is arbitrary, and subject to review.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 95; Dec. Dig. ⬅32(12).]

Appeal from the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Application of Chan Kam, alias Cham Kam, for a writ of habeas

corpus, against the immigration officers of the United States. From a judgment denying the writ, applicant appeals. On rehearing. Judgment reversed, and cause remanded, with directions to discharge applicant from custody.

See, also, 230 Fed. 990, —— C. C. A. ——.

Joseph P. Fallon, of San Francisco, Cal., for appellant.

John W. Preston, U. S. Atty., and Casper A. Ornbaun, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. In the petition for a rehearing in this case it is contended that unfairness was manifested by the immigration officers in securing a statement from Chan Kam while in jail, without the presence of counsel or of any of her friends, upon which statement the order of deportation was based. It appears that Chan Kam did not speak the English language and could not understand the questions propounded; that, notwithstanding this ignorance and disadvantage under which Chan Kam was laboring, there was imputed to her answers concerning the visit of one Jew Lin the inference that she had been having improper relations with him just prior to her arrest.

[1, 2] We think this objection to the proceedings is well taken. It appears from the examination to which reference is made that Chan Kam was married and was living with her husband. She was asked by the immigration officer:

"When you were arrested, at that time you were found in bed with a Chinaman who was not your husband?

"No; I was standing beside the bed, and the man was in the bed."

She was then told that the officers who arrested her said she was in bed with Jew Lin when she was arrested. She answered:

"That is not true. I was standing beside the bed."

She was asked:

"Had you been in bed with the man before the officers came into the room?"

She answered:

"No."

She was then asked:

"What were you doing in the room with the door closed at that time of the night [9 o'clock] and a strange man in your bed, with your husband absent?"

She answered:

"It was my room and bed, and Jew Lin was in bed, waiting for my husband."

It is contended by the government that this testimony is evidence of improper relations with the man with whom she was found and arrested, and proof that she was engaged in the practice of prostitution; but the testimony of the officers who made the arrest is not in the record, and we do not know from them what the situation of the parties

was at the time the arrest was made. In that aspect of the evidence there is, at most, only a suspicion, which is not sufficient. The testimony of Chan Kam is that she is married; that one Ho Bat is her husband; that she was not a prostitute, and had never practiced prostitution, and was not at the time of her arrest, or at any other time, an inmate of a house of prostitution. In this testimony she was corroborated by the testimony of Ho Bat, her husband. Jew Lin, whose visit was the cause of her arrest, testified he was not in Chan Kam's bed, but sat on the corner of her bed, because there was no chair in the room. He had been invited by Ho Bat to visit him, and had done so pursuant to his invitation, and had been in the room only about three minutes when the arrest was made. Two Chinese witnesses who occupied an adjoining room in the building testified that Chan Kam was not a prostitute, and had not practiced prostitution. This evidence is not contradicted by any direct testimony. The case therefore rests upon a supposed statement made by Chan Kam concerning Jew Lin, which appears to have been incorrect, probably because of an incorrect interpretation. The statement, whatever it was, appears to have been obtained by an unfair examination of Chan Kam by the officers.

We think the rule applicable in this case was stated by this court in Ong Chew Lung v. Alfred E. Burnett, 232 Fed. 853, —— C. C. A. ——, decided at the present term of court:

"It is not our function to weigh the evidence in this class of cases, but we may consider the question of law whether there was evidence to sustain the conclusion that the appellant, when he first came, fraudulently entered the United States. We find that that conclusion rests upon conjecture and suspicion, and not upon evidence. In the absence of substantial evidence to sustain the same, the order of deportation is arbitrary and unfair, and subject to judicial review. Whitfield v. Hanges, 222 Fed. 745, 751 [138 C. C. A. 199]; McDonald v. Siu Tak Sam, 225 Fed. 710 [140 C. C. A. 584]; Ex parte Lam Pui (D. C.) 217 Fed. 456."

Judgment reversed, and the cause remanded, with instructions to discharge the appellant from custody.