UNITED STATES v. MOY NOM.

(District Court, N. D. Iowa, Cedar Rapids Division. April 2, 1918.)

No. 98.

1. ALIENS ⊜⟿25—CHINESE PERSONS.
The minor son of a Chinese merchant, who was entitled to remain in the United States under the Chinese Exclusion Act without registration, during his minority at least, is one of the exempted class.

2. ALIENS ⊜⟿25—CHINESE EXCLUSION ACT—MERCHANTS.
Where the minor son of a Chinese merchant, who was lawfully in the United States, by reason of the status of his father, acquired by gift or purchase an interest in a mercantile business, such minor is, after reaching his majority, entitled to remain in the United States, notwithstanding his father's return to China.

3. ALIENS ⊜⟿27—CHINESE PERSONS—EXCLUSION.
Where defendant's status as a Chinese merchant was established before he went to China for a visit, the fact that after his return and admission into the United States he worked as a laborer for part of the time does not of itself forfeit his right to remain in the United States as one of the exempted class.

4. ALIENS ⊜⟿27—CHINESE EXCLUSION ACT—ESTOPPEL OF GOVERNMENT.
Where a Chinese person, before returning to China for a visit, presented himself to the Bureau of Immigration for preinvestigation as to his status as a merchant, and the Bureau found that he had for the required time been engaged as a merchant and gave him a certificate, the government is, after his return from China, estopped from questioning his status as a merchant, where there was no competent proof of fraud on his part in obtaining re-entry into the United States.

At Law. Proceeding by the United States for the deportation of Moy Nom and others, Chinese persons. From an order of deportation of a United States commissioner, defendant Moy Nom appeals. Order reversed, and defendant discharged.

The defendant Moy Nom, a Chinese person, appeals from an order of a United States commissioner directing that he be deported to China. The defendant was arrested upon an information filed before United States Commissioner Harwood, of this district, by an immigrant and Chinese inspector, which charged "that on or about March 16, 1917, the defendant Moy Nom (and two other Chinese persons, naming them) did unlawfully enter the United States at Cedar Rapids, Linn county, in this district, and were found laboring therein without certificates of residence, contrary to the form of the statute in such cases made and provided," etc. Upon a hearing before the commissioner the defendant was ordered deported to China, and the other two defendants discharged, and defendant brings this appeal to reverse such order as against him.

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. A. Fordyce, of Cedar Rapids, Iowa, and F. T. Milchrist, of Chicago, Ill., for appellant.

F. A. O'Connor, U. S. Atty., of New Hampton, Iowa, and Charles A. Lich, of St. Louis, Mo., representing the Bureau of Immigration, for the United States.

REED, District Judge (after stating the facts as above). The testimony before the commissioner shows without dispute that the appellant was born in China, and when 12 or 13 years old came to this country in about 1890 with his father, who then, or shortly thereafter, settled in Chicago, and engaged in business as a member of the mercantile company known as Hip Lung Ying Kee & Co., selling groceries and Chinese goods at No. 515 South Clark street, in that city. The father continued as a member of that company for some years, and then returned to China. When he returned to China, he arranged to sell an interest in this company to his son, the appellant, and the son then, or soon after, became a member of the company, and engaged in its business as such member, and continued therein until January, 1912, when he returned to China, remaining there some 18 or 20 months, then returned to Chicago, and again joined Hip Lung Ying Kee & Co. as a member thereof, and assisted in carrying on its business for a couple or more years. The appellant testified upon the hearing before the commissioner in his own behalf, and though his testimony is disconnected, and in some respects inconsistent, the foregoing is a substantially correct statement of his connection with Hip Lung Ying Kee & Co. in Chicago, and there is nothing to contradict it, unless it be the inconsistency in his statements as to the time and place of work in Chicago, and his connection with the Hip Lung Company.

The appellant on December 6, 1911, applied to the Immigration Bureau, then in the Department of Commerce and Labor, at Chicago, for preinvestigation of status, upon form No. 431 of that bureau, in which he named two white persons, among others, who could testify of their own knowledge that he was a merchant in Chicago. Upon completion of the examination under this application, the inspector in charge at Chicago on January 12, 1912, found and reported as follows:

"I do not feel that the appellant in this case has made a perfect showing as to his mercantile status, but in view of the fact that he holds a certificate of stock in an incorporated firm, that he is identified by the manager as the owner thereof, that the book records of the firm, which are apparently genuine and used in the ordinary course of business, show wages paid to him, and other money transactions between him and the manager of the firm, and the identification of applicant by the white witnesses as having been exclusively employed in the store during the past year, I do not feel justified in recommending the case for unfavorable consideration. Taking the case as a whole, I believe that the application should be granted.

"Respectfully,          [Signed] Howard D. Ebey, Chinese Inspector."

This finding was duly forwarded to the Commissioner of Immigration at the port of Seattle, Wash., accompanied by triplicate thereof, transcripts of the testimony, and report in accordance with rule 15. On presentation of this certificate to the Commissioner of Immigration at Seattle, Wash., the appellant was given an identification certifi-

cate, and he took passage upon a steamship for China, where he went, and returned therefrom in August, 1913. Upon his return he was examined by the Immigration Bureau at Seattle, and given a certificate of identity (which is No. 12676, marked Exhibit A, and attached hereto), and was permitted to re-enter the United States as a returning merchant, and he did so re-enter the United States about the 26th of August, 1913, returned to Chicago, where he again assumed his relations with Hip Lung Ying Kee & Co., and remained with that company as one of its members for something more than a year; but, the business of the company being dull, he obtained employment outside of that company, and assisted in working in some restaurants and laundries. About two years before his arrest he went to Iowa City, and there engaged in the laundry business, where he was discovered by the inspector, who filed the information against him, upon which he was arrested, given a hearing before the commissioner, and was ordered deported, as hereinbefore stated, apparently because he was found working in a laundry and had no certificate of registration permitting him to remain in the United States.

[1, 2] There is no doubt under the testimony, notwithstanding some inconsistencies in that of Moy Nom himself, that he became interested as owner in the mercantile company of Hip Lung Ying Kee Company to the extent of $1,000, and engaged in the business of that company in Chicago, on South Clark street, for some years prior to 1912; that he came to this country as a minor with his father, who was then or shortly after engaged in the mercantile business as one of that company in Chicago, and was therefore of a class entitled to remain in this country under the Chinese Exclusion Act without registration; and that appellant, as son of his father, was entitled to enter and thereafter remain with him as one of the exempted class, during his minority at least. United States v. Mrs. Gue Lim, 176 U. S. 459, 20 Sup. Ct. 415, 44 L. Ed. 544; Tom Hong v. United States, 193 U. S. 517, 24 Sup. Ct. 517, 48 L. Ed. 772; United States v. Yee Quong Yuen, 191 Fed. 28, 111 C. C. A. 500; Lee Kan v. United States, 62 Fed. 914, 10 C. C. A. 669, and cases cited. And if during that time the son succeeded to an interest of the father in the Hip Lung Company, either by purchase or gift from him, and engaged in the same business the father was engaged in, no reason is perceived why he does not acquire the status of the father as one of the exempted class. He was lawfully in the United States, and might rightly acquire property therein, of which he could not be deprived, except by due process of law.

[3] The father returned to China some time prior to 1912. Whether or not he disposed of his entire interest in the Hip Lung Company before going is not clear under the testimony, and is not deemed very important; for it does appear that before returning to China the father transferred to his son a part, at least, of his interest in the property of that company, that the son also acquired an additional interest therein, which with that obtained from the father amounted to $1,000, and became an owner to that extent in the property of that company, and as such owner participated in the business of the company in Chicago for some time prior and up to the year 1912, when he himself returned to China. That the appellant was of the exempted class, and

not liable to be deported, when he went to China in 1912, seems clear. Upon his return from China he was again examined by the Immigration Bureau at Seattle, to which he delivered, or which had retained, the certificate and papers given him by the Chicago Bureau, and received a certificate of identity in due form and was permitted to reenter the United States as a returning merchant, did re-enter the same, went to Chicago, and again engaged to some extent in business with the Hip Lung Company, where he remained for some time, just how long may not be entirely clear. While there he was temporarily employed, he says, in some restaurants and also in a laundry, and about two years before his arrest he went to Iowa City, this state, and engaged in a laundry, where he was discovered in bed by an energetic Chinese inspector, taken before a commissioner, and ordered deported to China. The fact alone, however, that he worked as a laborer during a part of the time after his return from China, does not of itself forfeit his right to remain in the United States as one of the exempted class. United States v. Yee Quong Yuen, 191 Fed. 28, 111 C. C. A. 500; United States v. Sing Lee (D. C.) 71 Fed. 680; In re Yew Bing Hi (D. C.) 128 Fed. 319; United States v. Louie Juen (D. C.) 128 Fed. 522; United States v. Leo Won Tong (D. C.) 132 Fed. 190; United States v. Foo Duck, 172 Fed. 856, 97 C. C. A. 204; United States v. Lee You Wing (D. C.) 208 Fed. 166; United States v. Lim Yuen (D. C.) 211 Fed. 1001; Ex parte Lew Lin Shew (D. C.) 217 Fed. 317.

[4] When the appellant presented himself to the Bureau of Immigration at Chicago in December, 1911, for preinvestigation as to the status claimed by him as a merchant, it was its duty, we think, to have fully investigated and then determined whether or not he was entitled to the status claimed by him. He submitted himself for examination, and produced two white witnesses and others who, with himself, were examined by it as to his status, and that bureau found him to have been then engaged for the required time as a merchant in Chicago, and gave him a certificate accordingly, with copy of the evidence taken by it, which was delivered to the Bureau of Immigration at Seattle, and upon his return from China the bureau at Seattle again examined him and gave him a certificate of identity, which permitted him to reenter the United States as such returning merchant. After that the government should be estopped from questioning his status as a merchant, unless it shall allege and establish by competent proof some fraud upon his part in obtaining re-entry to the United States. See United States v. Yee Quong Yuen, 191 Fed. 28, 111 C. C. A. 500; United States v. Lee You Wing, 211 Fed. 939, 941, 128 C. C. A. 437; United States v. Lim Yuen (D. C.) 211 Fed. 1001, 1007; United States v. Foo Duck, 172 Fed. 856, 858, 97 C. C. A. 204; Lui Hip Chin v. Plummer, Immigrant Inspector, 238 Fed. 763, 151 C. C. A. 613; Louie Dai v. United States, 238 Fed. 69, 73, 151 C. C. A. 144.

There is no charge or claim of any such fraud, or that the appellant is not a person who might rightly be admitted upon a proper showing to the United States. He writes his name plainly in English, speaks the English language, though not very plainly or correctly, and is apparently an intelligent Chinese person, in the full possession of

his faculties, and I am convinced that the evidence is not sufficient to warrant his deportation.

The case is clearly distinguishable from that of the United States v. Fong Foo (D. C.) 235 Fed. 452, cited, among others, by the government. In that case Fong Foo claimed that he was born in the United States, and not subject to deportation. He also claimed that he had attained the status of a merchant, and was therefore of the exempted class when he went to China in 1907. Upon his return from China, in 1909, he was examined at the port of San Francisco, and given a proper certificate of identity, and permitted to re-enter the United States as a returning merchant. Upon his return and re-entry into the United States, he, did not again engage in the mercantile business, but within a short time left San Francisco, and was next found in the northern part of this state in November, 1914, owning and operating a laundry. His testimony was uncorroborated, and it was held that he failed to sustain the burden resting upon him to show his right to remain in the United States, and was therefore ordered to be deported.

The order of the commissioner, deporting the appellant, is reversed, his bail on appeal is exonerated, and he is discharged. It is ordered accordingly.