## SVARNEY v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. August 13, 1925.)

No. 6498.

**1. Habeas corpus ⊂⟩113(1)—Proper method to review judgment discharging writ and remanding defendant for deportation is by appeal, and not by writ of error; but irregularity may be disregarded.**

Proper method to review judgment discharging a writ of habeas corpus, and remanding defendant to proper authority for deportation under warrant issued by the United States Department of Labor, is by appeal, instead of writ of error; but irregularity will be disregarded, in view of Act Sept. 6, 1916, § 4 (Comp. St. § 1649a).

**2. Aliens ⊂⟩54—Courts will not examine into conflicting evidence in deportation proceedings.**

In proceedings for deportation of an alien for violation of Immigration Act Feb. 5, 1917, courts will not examine into conflicting evidence.

**3. Aliens ⊂⟩54—Deportation proceedings are in nature civil; rules of evidence need not be strictly followed, but right of cross-examination must be observed.**

Deportation proceedings are in their nature civil, and rules of evidence need not be followed with same strictness as in the courts; but fundamental and essential rules of evidence and procedure, including the right of cross-examination, must be observed.

**4. Aliens ⊂⟩54—Affidavit in deportation proceedings for transporting woman for purposes of prostitution held incompetent as evidence.**

In proceedings for deportation of alien for violation of Immigration Act Feb. 5, 1917, in that he caused a woman to be transported in interstate commerce for purposes of prostitution, affidavit of alleged prostitute *held* incompetent as evidence, where affiant was not produced, and no showing was made that she was not procurable as a witness.

**5. Aliens ⊛54—Evidence held insufficient to support findings in warrant for depo'rtation.**

Evidence *held* insufficient to support findings in warrant for deportation that defendant had been employed by or in connection with a house of prostitution, or that he had promised to protect from arrest a prostitute.

In Error to the District Court of the United States for the District of Utah; Colin Neblett, Judge.

Habeas corpus by Nick Svarney against the United States to secure his release under deportation proceedings. From a judgment discharging the writ, and remanding petitioner, he brings error. Reversed, with directions.

King & Schulder and Leslie Frazer, all of Salt Lake City, Utah, for plaintiff in error.

Charles M. Morris, U. S. Atty., and J. Kimball Smith and Edward M. Morrissey, Asst. U. S. Atty., all of Salt Lake City, Utah.

Before SANBORN, LEWIS, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge. [1] By this writ of error a reversal is sought of a judgment discharging a writ of habeas corpus and remanding plaintiff in error, hereafter called defendant, to the proper authorities for deportation under a warrant theretofore issued by the United States Department of Labor. The proper method of review was by appeal, instead of by writ of error. Fisher v. Baker, 203 U. S. 174, 27 S. Ct. 135, 51 L. Ed. 142, 7 Ann. Cas. 1018; In re Graves (C. C. A.) 270 F. 181. In view, however, of the Act of September 6, 1916 (39 Stat. 727, § 4 [Comp. St. § 1649a]), we disregard the irregularity in practice.

The facts leading up to the warrant for deportation are briefly as follows:

In 1909, defendant, a Greek subject, came to the United States. Except for a brief period, when he returned to Greece to serve in the army, he has been continuously in this country, residing and working in Utah. In March, 1922, he was indicted for violation of the Mann Act (Comp. St. §§ 8812–8819). There were three counts in the indictment: First, causing one Ruth Roberts to be transported in interstate commerce for the purpose of prostitution; second, causing her to be transported with intent to induce her to become a prostitute; third, procuring a railroad ticket, to be used by her in interstate commerce for the purpose of prostitution.

The second count was dismissed. Plea of guilty was entered to the first and third counts. Sentence of six months in jail was imposed April 1, 1922. Immediately on the expiration of his sentence, defendant was arrested, charged with violation of the Immigration Act of February 5, 1917 (39 Stat. 874). There were three specific charges:

(1) "That he has been found employed by, in, or in connection with a house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes or where prostitutes gather;" (2) "that he has been found subsequent to his entry protecting, or promising to protect, from arrest, a prostitute;" (3) "and that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute."

A hearing was had before the United States immigration inspector at Salt Lake City. At the hearing, the inspector notified defendant that a fourth charge would then be made against him, to wit, assisting a prostitute. As a result of the hearing, the Assistant Secretary of Labor, on or about September 28, 1922, issued a warrant for deportation, in which he held that defendant had been found in the United States in violation of the Immigration Act of February 5, 1917. Two of the four specific charges were upheld, the first and the second.

A petition for a writ of habeas corpus was presented to the United .States District Court for the District of Utah, alleging that defendant had not been given a fair hearing, and that there was no evidence to support the findings. The writ issued. A return was made to the writ. After a hearing the writ was discharged and the defendant remanded to the United States marshal. Writ of error has brought the case here.

The Act of February 5, 1917, violation of which was charged against defendant, reads so far as here material as follows:

"Sec. 19. * * * Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practising prostitution after such alien shall have entered the United States, or who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather, or who in any way assists any prostitute or protects or promises to protect from arrest

any prostitute, * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj.

Of the numerous offenses denounced in the statute, the defendant was specifically found to have committed two. The evidence introduced before the inspector consisted (1) of the testimony of a special agent of the Department of Justice and of the defendant himself; (2) an affidavit of Ruth Roberts; (3) a copy of the commitment in the case against defendant under the Mann Act.

[2] The same evidence was introduced upon the habeas corpus hearing in the District Court, with one or two additional papers from the record in the case against defendant under the Mann Act. It is elementary that in cases of this kind the courts will not examine into conflicting evidence. Nishimura Ekiu v. United States, 142 U. S. 651, 660, 12 S. Ct. 336, 35 L. Ed. 1146; Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165; Tang Tun v. Edsell, 223 U. S. 673, 32 S. Ct. 359, 56 L. Ed. 606; Lapina v. Williams, 232 U. S. 78, 34 S. Ct. 196, 58 L. Ed. 515; Lewis v. Frick, 233 U. S. 291, 300, 34 S. Ct. 488, 58 L. Ed. 967; United States v. Rodgers, 191 F. 970, 112 C. C. A. 382; United States v. Uhl, 211 F. 628, 128 C. C. A. 560.

The assignments of error, however, raise two main questions which are proper to be considered: Whether defendant had a fair hearing before the inspector; whether there is any substantial evidence to support the findings upon which the warrant for deportation was based. It is claimed by defendant that the introduction in evidence of the affidavit of Ruth Roberts rendered the hearing unfair, since the affidavit was not competent evidence, and defendant was deprived of the right of cross-examination. This affidavit had been secured while the woman was under arrest in connection with the charge against defendant under the Mann Act. In the affidavit the woman stated in substance that at defendant's request she went to "work" at the coffee house of defendant at Soldier Summit in December, 1921, and stayed until January 20, 1922, and again for a few days in February, 1922; that she practiced prostitution while there; that she paid defendant $3 a day for board and room while there; that defendant procured for her a railroad ticket, which she used in going the second time to Soldier Summit. The affiant who made this affidavit was not pro-

duced at the hearing, and no showing was made that she was not procurable as a witness.

[3] Deportation proceedings are in their nature civil. The rules of evidence need not be followed with the same strictness as in the courts. In Bilokumsky v. Tod, 263 U. S. 149, 157, 44 S. Ct. 54, 57 (68 L. Ed. 221), the court said: "Moreover, a hearing granted does not cease to be fair, merely because rules of evidence and of procedure applicable in judicial proceedings have not been strictly followed by the executive; or because some evidence has been improperly rejected or received. Tang Tun v. Edsell, 223 U. S. 673, 681 [32 S. Ct. 359, 56 L. Ed. 606]. To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process. Chin Yow v. United States, 208 U. S. 8 [28 S. Ct. 201, 52 L. Ed. 369]; Kwock Jan Fat v. White, 253 U. S. 454, 459 [40 S. Ct. 566, 64 L. Ed. 1010]. Compare Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, 91 [33 S. Ct. 185, 57 L. Ed. 431]."

However, even in such administrative proceedings, fundamental and essential rules of evidence and of procedure must be observed. In Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U. S. 88, 93, 33 S. Ct. 185, 187 (57 L. Ed. 431), the court said: "The Commission is an administrative body and, even where it acts in a quasi judicial capacity, is not limited by the strict rules, as to the admissibility of evidence, which prevail in suits between private parties. Int. Com. Comm. v. Baird, 194 U. S. 25 [24 S. Ct. 563, 48 L. Ed. 860]. But the more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and must be given opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party maintain its rights or make its defense."

The right of cross-examination has long been firmly established in English-speaking countries. Wigmore, in his work on Evidence, says (section 1367): "For two centuries past, the policy of the Anglo-Amer-

ican system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law.  *  *  *  If we omit political considerations of broader range, cross-examination, not trial by jury, is the great and permanent contribution of the Anglo-American system of law to im-. proved methods of trial procedure."

See, also, Chamberlayne's Hand Book on Evidence, §§ 171, 172. In' The Ottawa, 3 Wall. 268, 271, 18 L. Ed. 165, the court said: "Cross-examination is the right of the party against 'whom the witness is called, and the right is a valuable one as a means of separating hearsay from knowledge, error from truth, opinion from fact, and inference from recollection, and as a means of ascertaining the order of the events as narrated by the witness in his examination in chief, and the time and place when . and where they occurred, and the attending circumstances, and of testing the intelligence, memory, impartiality, truthfulness, and integrity of the witness."

This court has in numerous cases and in various classes of litigation been insistent that such right should not be infringed. In Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 129 F. 668, 674, 64 C. C. A. 180, 186, a civil case, it was said: "But a fair and full cross-examination of a witness upon the subjects of his examination in chief is the absolute right, and not the mere privilege, of the party against whom he is called, and a denial of this right is a prejudicial and fatal error."

In Gallaghan v. United States (C. C. A.). 299 F. 172, 176, a criminal case, it was said: "The action of the court in denying counsel the right to cross-examine was a clear denial of defendants' legal rights."

In Whitfield v. Hanges, 222 F. 745, 749, 138 C. C. A. 199, 203, a deportation case, the court, speaking by Judge Sanborn, said: "Indispensable requisites of a fair hearing according to these fundamental principles are that the course of proceeding shall be appropriate to the case and just to the party affected; that the accused shall be notified of the nature of the charge against him in time to meet it; that he shall have such an opportunity to be heard that he may, if he chooses, cross-examine the witnesses against him; that he may have time and opportunity, after all the evidence against him is produced and known to him, to produce evidence and witnesses to refute it; that the decision shall be governed by and based upon the evidence at the hearing, and that only;

and that the decision shall not be without substantial evidence taken at the hearing to support it. In re Rosser, 101 F. 562, 567, 41 C. C. A. 497; In re Wood & Henderson, 210 U. S. 246, 254, 28 S. Ct. 621, 52 L. Ed. 1046; Interstate Commerce Commission v. Louisville & Nashville R. R. Co., 227 U. S. 88, 91–93, 33 S. Ct. 185, 57 L. Ed. 431; Ex parte Petkos (D. C.) 212 F. 275–278; United States v. Sibray (C. C.) 178 F. 144, 149." See, also, McDonald v. Siu Tak Sam, 225 F. 710, 140 C. C. A. 584.

[4] It is contended that defendant made no objection to the introduction of the affidavit before the inspector and therefore cannot now complain. It is our understanding that a rule of the department in effect at the time of the hearing provided that "objections and exceptions of counsel should not be entered on the record but might be presented in. accompanying brief." But, however that may be, we are not inclined to apply strictly the rule as to objections and exceptions in a case where the quasi tribunal itself introduces its own evidence. Our conclusion is that the affidavit in question was not competent evidence, and ought not to have been received, and that its introduction rendered the hearing unfair.

[5] With the affidavit of Ruth Roberts eliminated, there remains no substantial evidence to support the findings upon which the warrant for deportation is based. There was no evidence to support the finding that defendant was "employed by, in, or in connection with a house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes or where prostitutes gather." The testimony of the Special Agent Cassidey was to the effect that the coffee house which defendant owned did not even have the appearance of a dance hall or a house of prostitution. There was also total lack of evidence to support the finding that defendant promised to protect from arrest a prostitute.

Conceding, but without deciding, that the record papers in the case against defendant under the Mann Act were properly received in evidence, yet they did not tend to support either of the findings upon which the warrant for deportation was based, but related to entirely different offenses. A comparison of the charges in the indictment with the findings in the warrant for deportation demonstrates this beyond controversy. Our fur. ther conclusion must therefore be that there was no substantial evidence in the record to

support the findings in the warrant for deportation.

Judgment is reversed, with directions to try on the merits de novo in the District Court, on evidence there to be produced, the question whether or not the alien is guilty of the charges made against him in the warrant of arrest, in accordance with the practice outlined in Whitfield v. Hanges, 222 F. 745, 756, 138 C. C. A. 199.